2000 ND 114

**Dean HOROB, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,**

and

**Western, Inc., Respondent.**

No. 990348.

Supreme Court of North Dakota.

May 26, 2000.

Kevin J. Chapman, McKennett Stenehjem Reierson Forsberg & Chapman, P.C., Williston, for claimant and appellant.

Brent J. Edison, Special Assistant Attorney General, Bismarck, for appellee.

KAPSNER, Justice.

[¶ 1] Dean Horob appealed a district court judgment affirming an order of the North Dakota Workers Compensation Bureau ("the Bureau") requiring Horob to repay disability benefits he received for a work injury and forfeit all future benefits in connection with two work injuries. We affirm in part, reverse in part, and remand.

I

[¶ 2] While working for his father's business, Western Construction, Horob fell from the roof of a building on March 3, 1975, and sustained a head injury. That injury resulted in a seizure disorder, but not in cognitive deficits. Horob's seizures required a left temporal lobectomy in 1987. Horob has also required anti-seizure medications. The Bureau accepted liability for the 1975 injury and paid Horob's medical expenses.

[¶ 3] Horob graduated from college in 1978 and worked for Western Construction until he took over the business in 1988, and incorporated it as Western, Inc. On March 14, 1995, Horob fell from a roof, sustaining a head injury resulting in cognitive impairments. The Bureau accepted liability, and paid medical and disability benefits.

[¶ 4] On December 20, 1996, the Bureau mailed Horob a notice of intention to discontinue or reduce benefits, informing Horob his temporary total disability benefits for the 1995 injury would be "DISCONTINUED ON 1–10–97 DUE TO FALSE STATEMENT AND FAILURE TO REPORT INCOME." On February 25, 1997, the Bureau issued an order in connection with Horob's claim on the 1995 injury. In that order, the Bureau found: 1)"Disability benefits were paid from March 14, 1995, through January 10, 1997;" 2) "Claimant has been working at his self-employment business, Western Inc., since June 23,

1995, and failed to report his earnings to the Bureau;" 3) Horob "made a false statement regarding his return-to-work status and willfully failed to report his earnings to the Bureau;" and 4) Horob "received an overpayment of disability benefits in the amount of $15,211.85, for the time period of June 23, 1995, through January 10, 1997." The Bureau ordered Horob "must repay the sum of $15,211.85 for disability benefits paid from June 23, 1995, through January 10, 1997," and ordered he "forfeits any additional workers' compensation benefits in connection with this claim." Horob requested reconsideration.

[¶ 5] On April 13, 1997, Horob crashed a vehicle into the Williston True Value Store and suffered a number of injuries. Horob filed a reapplication for benefits in connection with his claim for the 1975 injury, asserting the accident was caused by a seizure related to the 1975 work injury. On September 17, 1997, the Bureau issued an order denying Horob's reapplication. That order listed the claim numbers for both Horob's 1975 claim (No. 75 218 176 T23) and his 1995 claim (No. 95 446 418 T23). In that order, the Bureau found Horob's 1975 "work injury was consolidated into the claimant's compensable work injury of March 14, 1995," Horob "has forfeited all further workers' compensation benefits in connection with his consolidated work injuries to his head," and ruled Horob is not "entitled to any workers' compensation benefits in connection with his reapplication."

[¶ 6] On November 14, 1997, the Bureau issued an amended order denying further benefits and ordering repayment of benefits. In it, the Bureau again referred to the claim numbers for the claims Horob filed for both the 1975 and 1995 work injuries. The Bureau found Horob had been working and receiving income which he had not reported to the Bureau. The Bureau found Horob's 1975 and 1995 work injuries were "consolidated ... in light of the ongoing treatment for his head injuries arising from the two accidents," and Horob "made a false statement regarding his return-to-work status and willfully failed to report his earnings to the Bureau." The Bureau ordered that Horob "must repay the sum of $15,211.85 for disability benefits paid from June 23, 1995, through January 10, 1997" and "forfeits any additional workers' compensation benefits in connection with the consolidated claims of 75 218 176 T23, and 95 446 418 T23."

[¶ 7] Horob requested a formal hearing. A hearing was held on August 12, 1998, before an administrative law judge ("ALJ"). The ALJ found Horob injured his head in falling from a roof on March 14, 1995, for which the Bureau accepted liability and paid disability benefits from March 14, 1995, through January 10, 1997. The ALJ also found:

7. Following the Investigation Referral issued by the Bureau on August 8, 1996, the Claimant was observed operating a forklift; performing landscaping; operating a skidster; concrete finishing work; working with sheet metal; working on garage doors; as well as performing other physical work for Western, Inc.. (Exhibit B65–67). The Claimant continued to perform bookkeeping work for his business and deposits were made by the Claimant from April 1995 through September 1996 totaling $124,711.97. (Exhibit B73 and B3 through B61). The Claimant testified to taking cash from the deposit transactions at hearing.

8. Exhibits B65–B67 reveal that the Claimant performed work after March 14, 1995, the date of Claimant's work injury. Company deposit slips show that Claimant was paid by his customers after his March 14, 1995 work injury. (Exhibit B3–B61).

9. The Claimant signed work confirmation cards between June 23, 1995 and December 16, 1996 indicating he has not returned to work and has not done any work for pay or not. (Exhibits B10, B14, B17, B18, B24, B26, B30, B32, B62, B69).

10. The Claimant completed a verification of ongoing entitlement to benefits form supplied by the Bureau on August 23, 1996. A fraud warning was attached to the verification form. (Exhibit B52). The Claimant reported no work other than voluntary work for friends. (Exhiit B52).

[¶ 8] The ALJ concluded:

I. Whether Claimant Made Willful and Material False Statements Regarding His Work Activities and Receipt of Income.

. . . .

C. By the greater weight of the evidence, the Claimant has failed to report work activities and also income from work activities in violation of N.D.C.C., § 65–05–08.

D. By the greater weight of the evidence, the Claimant has willfully failed to notify the Bureau of work or other activities as required by subsection 3 of § 65–05–08. The Claimant has also failed to report the receipt of income from work. Claimant further argues that he does not understand his actions and that because of his reduced capacity, he cannot formulate the intent to defraud the Bureau. However, as to the question of whether Claimant has the capacity to make a purported false statement to the Bureau, the evidence shows that Claimant clearly does. The only discrepancies are between what the Claimant said and what he was actually doing.

II. Whether the Bureau Erred in Consolidating Claim No. 75 218176 T23 and Claim No. 95 446418 T23.

. . . .

C. By the greater weight of the evidence, the Bureau was not in error about consolidating Claim No. 75 218176 T23 and Claim No. 95 446418 T23 as the two (2) claims share many related indicia. Furthermore, by the greater weight of the evidence, the false statements of the Claimant referred to earlier, are relevant to both Claim No. 75 218176 T23 and 95 446418 T23. . . .

[¶ 9] The ALJ recommended an order requiring Horob to repay $15,211.85 for disability benefits paid and that he "forfeit any additional workers' compensation benefits in connection with the consolidated claims of 75 218176 T23 and 95 446418 T23." [1]

[¶ 10] The Bureau adopted the ALJ's recommended findings of fact and added additional findings of fact that, with a purposeful state of mind, Horob "made false statements about his work activities and receipt of income" which "were intentional, not inadvertent," and "were 'willful' under N.D.C.C. § 65–05–33." The Bureau also found Horob's "false statements and failure to report income could have misled the Bureau or medical experts in a determination of the claim" and they "were 'material' under N.D.C.C. § 65–05–33." The Bureau adopted the ALJ's recommended conclusions of law and order as its order on October 14, 1998. Horob appealed to the district court, which affirmed the Bureau's order. Horob appealed the district court's judgment.

## II

[¶ 11] On appeal, we review the Bureau's decision, not the district court's decision. *Siewert v. North Dakota Workers Comp. Bureau*, 2000 ND 33, ¶ 18, 606 N.W.2d 501. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm an administrative agency decision unless its findings of

---

1. The ALJ found Horob was involved in a car accident in which he crashed into the Williston True Value Store on April 13, 1997, and that Horob contended the accident was caused by a seizure related to Horob's 1975 injury. The ALJ also found the Bureau had issued an order denying Horob's reapplication because it claimed the crash was caused by Horob's 1995 brain injury, not the 1975 injury. The recitation of conflicting contentions does not constitute a finding. *Vernon v. North Dakota Workers Comp. Bur.*, 1999 ND 153, ¶ 10, 598 N.W.2d 139. The ALJ did not make a finding on this issue.

fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, the decision is not supported by the conclusions of law, the decision is not in accordance with the law or violates the appellant's constitutional rights, or the agency's rules or procedures deprived the appellant of a fair hearing. *Id.* Our review of an agency's findings of fact is limited to determining if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence in the record. *Id.* at ¶ 19. Questions of law are fully reviewable on appeal from a Bureau decision. *Witcher v. North Dakota Workers Comp. Bureau,* 1999 ND 225, ¶ 8, 602 N.W.2d 704.

[¶ 12] While the parties have presented a number of issues, we deem two issues to be dispositive: 1) whether the Bureau's false statements findings are supported by the evidence, and 2) whether the Bureau properly ordered forfeiture of all benefits in connection with both Horob's 1975 and 1995 work-related injuries.

A

[¶ 13] Horob contends the Bureau's false statements findings are not supported by the evidence, which, he asserts, proves he did not have the mental ability to defraud the Bureau, and contends the Bureau disregarded medical evidence favorable to him.

[¶ 14] Section 65–05–33, N.D.C.C., provides a claimant who willfully makes a false statement or who receives disability benefits and willfully fails to notify the Bureau of work or income from work "shall reimburse the bureau for any benefits paid based upon the ... false statement and ... shall forfeit any additional benefits relative to that injury." The legislative intent in N.D.C.C. § 65–05–33 was to create a penalty for anyone who accepts disability benefits for a period of time in which that person is actually working. *Hayden v. North Dakota Workers Comp. Bureau,* 447 N.W.2d 489, 496 (N.D.

1989). "To trigger the statutory consequences, a false statement must be intentional, not inadvertent, and material, not peripheral." *F.O.E. Aerie 2337 v. North Dakota Workers Comp. Bureau,* 464 N.W.2d 197, 201 (N.D.1990). "Thus, once it is proved a false statement has been made, the Bureau must then prove the act of making the false statement was done intentionally." *Hausauer v. North Dakota Workers Comp. Bureau,* 1997 ND 243, ¶ 14, 572 N.W.2d 426. "The Bureau must prove the claimant's state of mind was purposeful in making the false statement." *Id.* "A state of mind can rarely be proven directly and must usually be inferred from conduct and circumstantial evidence." *Dean v. North Dakota Workers Comp. Bureau,* 1997 ND 165, ¶ 20, 567 N.W.2d 626.

[¶ 15] "A false statement may be sufficiently material to support forfeiture of future benefits, even though it was not sufficiently material to mislead the Bureau into paying initial benefits or to require the reimbursement of initial benefits." *Dean v. North Dakota Workers Comp. Bureau,* 1997 ND 165, ¶ 15, 567 N.W.2d 626. "If the Bureau is seeking reimbursement for benefits paid, materiality requires the Bureau to prove the false claim or false statement caused the benefits to be paid in error." *Hausauer v. North Dakota Workers Comp. Bureau,* 1997 ND 243, ¶ 17, 572 N.W.2d 426. "If the Bureau is seeking forfeiture of future benefits, a false claim or false statement is sufficiently material if it is a statement which could have misled the Bureau or medical experts in a determination of the claim." *Id.* at ¶ 18.

[¶ 16] Horob does not challenge the Bureau's findings that he made false statements, but contends he lacked the "mental ability to defraud the Bureau," arguing:

It is undisputed that [Horob] suffered significant cognitive deficits as a result of the 1995 injury. (R. at 00 113.) [Horob] does not have the mental capacity

to "willfully" make a false statement to the Bureau; or to willfully fail to report income to the Bureau. Dean presented credible medical evidence on this issue, but the Bureau ignored it and, in fact, did not even address the medical evidence in its findings of fact and conclusions of law. (R. at 00459–00475.) (App. at 4–20).

[¶ 17] In a June 8, 1998, letter, Timothy L. Patterson, D.O., said "with a reasonable degree of medical certainty that [Horob] could not willfully defraud the bureau after his 1995 fall." Patterson reported "tests demonstrate a significant neurocognitive impairment." Patterson further said: "The term 'willfully' would note some forethought and intention to which he would be able to rationalize all aspects of his actions. I don't think Dean is capable of this." Horob also relies on testimony by a social worker, Horob's sister, and Horob, as showing Horob "does not understand the consequences of his actions."

[¶ 18] The ALJ and the Bureau addressed Horob's arguments about his inability to defraud the Bureau in Conclusion of Law I.D.:

D. By the greater weight of the evidence, the Claimant has willfully failed to notify the Bureau of work or other activities as required by subsection 3 of § 65–05–08. The Claimant has also failed to report the receipt of income from work. Claimant further argues that he does not understand his actions and that because of his reduced capacity, he cannot formulate the intent to defraud the Bureau. However, as to the question of whether Claimant has the capacity to make a purported false statement to the Bureau, the evidence shows that Claimant clearly does. The only discrepancies are between what the Claimant said and what he was actually doing.

[¶ 19] Although medical evidence and testimony by a social worker, Horob's sister, and Horob provided circumstantial evidence of inability to act willfully, there was also circumstantial evidence indicating Horob had the ability to act willfully. While receiving disability benefits, Horob operated a forklift, did landscaping, operated a Bobcat, did concrete finishing, worked with sheet metal, worked on garage doors, did bookkeeping work for his business, and made bank deposits. Horob took cash when making business bank deposits. Horob prepared job proposals and financial reports, handled the finances and payroll, and supervised employees. Horob testified he "was doing some work," but he "was not getting paid." Horob testified he understood he "would be required to report to the Bureau any work activities or income" and, when filling out return-to-work cards, he understood the Bureau wanted to know if he "were out there doing any work" or "earning income from work." Horob testified about differences in his work before and after his 1995 injury:

[A]fter my '95 fall, I felt like I was putting in about 20 percent physical work and 80 percent desk work ... And before my '95 accident, it was almost the other way around. It was 20 percent paperwork and then 80 percent physical work.

Horob testified he understood the Bureau did not want him on buildings because he might have a seizure, that he was "on buildings" when he was "on disability benefits," and he "didn't want [the Bureau] to know."

[¶ 20] "This Court has often said the Bureau must adequately explain its disregard of medical evidence favorable to a claimant." *Loberg v. North Dakota Workers Comp. Bureau*, 1998 ND 64, ¶ 11, 575 N.W.2d 221. The Bureau should have stated more specifically why it discounted medical evidence in Horob's favor. However, there is substantial evidence about the nature and extent of Horob's work activities, from which a reasoning mind could reasonably find, as the Bureau did, that Horob had the capacity to make false statements, did make false statements, and

made the false statements purposefully, intentionally, not inadvertently, *i.e.*, willfully. We conclude a reasoning mind reasonably could have determined the Bureau's false statement findings were proven by the weight of the evidence in the record.

### B

[¶ 21] Horob argues the Bureau erred in ordering reimbursement of disability benefits he received as a result of his 1995 head injury, as well as ordering forfeiture of all future benefits in connection with both his 1995 injury and his 1975 injury.

[¶ 22] With regard to reimbursement of disability benefits paid in connection with Horob's 1995 injury, the false statements were clearly material, as the false statements caused disability benefits to be paid in error. *See Hausauer v. North Dakota Workers Comp. Bureau,* 1997 ND 243, ¶ 17, 572 N.W.2d 426. The false statements were also material with regard to future disability benefits in connection with the 1995 injury for which Horob received disability benefits, as they could have misled the Bureau in a determination of the claim. *Id.* at ¶ 18.

[¶ 23] Horob's false statements do not, however, justify forfeiture of all future benefits in connection with his 1975 injury resulting in his seizure disorder. The false statements were not material to future benefits in connection with the 1975 injury, as they could not "have misled the Bureau or medical experts in a determination of the claim," *Hausauer,* 1997 ND 243, ¶ 18, 572 N.W.2d 426, because they had nothing to do with his continuing need for medical expense benefits, such as anti-seizure medication, necessitated by the 1975 injury resulting in his seizure disorder.

[¶ 24] Horob has not shown the Bureau erred in consolidating the 1975 and 1995 claims for administrative convenience. However, the Bureau could not use the consolidation to order forfeiture of benefits for both injuries for false statements mate-

rial to only one. An "injury is the result of the accident, and includes all the effects of the accident. . . . The injury is the state of facts which entitles the claimant to compensation." *Schmidt v. North Dakota Workmen's Comp. Bureau,* 73 N.D. 245, 252, 13 N.W.2d 610, 614 (1943). "Where an applicant is injured in two or more separate and distinct accidents he has the right to make application for each injury." *Id.* Section 65–05–33, N.D.C.C., is cast in terms of injuries, not claims, files, or the like. Section 65–05–33 provides a claimant who violates that statute "shall reimburse the bureau for any benefits paid based upon the false claim or false statement . . . and shall forfeit any additional benefits *relative to that injury.*" (Emphasis added). The statute does not require forfeiture of future benefits for any other injuries. We conclude the Bureau erred in ordering Horob forfeited all future benefits in connection with his seizure disorder resulting from his 1975 work injury.

### III

[¶ 25] The judgment is affirmed to the extent it affirmed the Bureau's order for reimbursement of disability benefits paid and forfeiture of future benefits in connection with Horob's 1995 work injury, reversed to the extent it affirmed the Bureau's order for forfeiture of future medical benefits in connection with Horob's 1975 work injury, and the matter is remanded for entry of a judgment directing the Bureau to reinstate medical benefits in connection with Horob's 1975 injury and to determine Horob's claim the April 13, 1997, car accident was caused by a seizure related to his 1975 injury, requiring payment of further benefits.

[¶ 26] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.