2008 ND 59

**Geremy OLSON, Claimant and Appellant**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee**

and

**Wilton Fire Protection Dist. 1, Respondent.**

No. 20070094.

Supreme Court of North Dakota.

March 25, 2008.

Steven L. Latham, Larson, Latham and Huettl, LLP, Bismarck, N.D., for claimant and appellant.

Shanon Marie Gregor (argued), Special Assistant Attorney General, and Leo F.J.

Wilking (on brief), Special Assistant Attorney General, Fargo, N.D., for appellee.

MARING, Justice.

[¶ 1] Geremy Olson has appealed from a district court judgment affirming an order of Workforce Safety and Insurance ("WSI") which determined the amount of Olson's average weekly wage under N.D.C.C. § 65–01–02(5)(b) for purposes of calculating disability benefits. We affirm, concluding that WSI correctly interpreted the plain language of N.D.C.C. § 65–01–02(5)(b) and did not err in calculating Olson's average weekly wage.

I

[¶ 2] Olson was injured on April 8, 2005, while fighting a fire as a volunteer with the Wilton Fire Department. As a volunteer firefighter, Olson was afforded the coverage and protection of the workers compensation laws as if he were a full-time paid employee of the city. *See* N.D.C.C. § 65–06–02. Olson applied for benefits, and WSI accepted his claim and paid medical and temporary total disability benefits.

[¶ 3] At the time of his injury, Olson was self-employed as the owner of a video production company. In its initial decision awarding disability benefits, WSI calculated Olson's average weekly wage to be $101, based upon his 2004 tax return, which showed a net profit of $5,265 from his business.

[¶ 4] Olson requested reconsideration of WSI's decision, arguing that WSI had failed to include $5,871 he had earned in ordinary wages at a second job and that certain deductions for business expenses and depreciation should be added back to his business's net profit to calculate his average weekly wage. Olson contended his actual net income for 2004 was $43,777, calculated as follows:

| Frontier personal services W-2 | 5871 |
| Regular depreciation | 1557 |
| Sec 179 depreciation | 21499 |
| Special depreciation allowance | 947 |
| Business use of personal vehicle | 4952 |
| Business use of home | 3696 |
| Business net income | 5255 |
| | |
| Total | 43777 |

Based upon the information provided, WSI amended its earlier decision to include the wages Olson earned at his second job and recalculated Olson's average weekly wage to be $214. WSI refused, however, to include Olson's business deductions and depreciation in calculating his net earnings from self-employment. Olson filed a second request for reconsideration and, in an order dated July 26, 2005, WSI again determined that business deductions and depreciation should not be added back to Olson's net earnings and that his average weekly wage was $214.

[¶ 5] Olson requested a hearing. After a prehearing conference, the parties agreed to submit the matter to the administrative law judge ("ALJ") based upon exhibits, affidavits, and briefs and oral argument by counsel. Olson submitted a profit and loss statement for his business for 2004 showing net income of $21,460. Olson also submitted four separate 2004 tax returns, prepared by his accountant, which he claimed he could have legally filed. The four versions included varying deductions and expenses, and showed net income from his business ranging from $10,217 to $37,866. Olson argued that his actual net earnings from his business was the amount shown on his 2004 profit and loss statement, $21,460.

[¶ 6] The ALJ determined that WSI had failed to correctly calculate Olson's average weekly wage and recommended vacating WSI's prior order. The ALJ further concluded, however, that Olson had failed to demonstrate that the amount shown on his profit and loss statement was

an accurate depiction of his net earnings from self-employment. The ALJ therefore recommended that WSI redetermine Olson's average weekly wage "pursuant to [N.D.C.C. § 65–01–02(5)(b) ] according to its purpose and principles of constitutional equal protection."

[¶ 7] WSI rejected most of the ALJ's recommended findings of fact and conclusions of law, determining that the ALJ had misconstrued the relevant statute. WSI concluded its prior calculation of Olson's average weekly wage at $214 was correct, and entered a final order affirming its July 26, 2005, order. Olson appealed to the district court, which affirmed WSI's final order.

## II

[¶ 8] Courts exercise only a limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Fettig v. Workforce Safety & Ins.*, 2007 ND 23, ¶ 9, 728 N.W.2d 301; *Tverberg v. Workforce Safety & Ins.*, 2006 ND 229, ¶ 7, 723 N.W.2d 676. Under N.D.C.C. § 28–32–46, the district court must affirm an administrative agency order unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 9] On appeal from the district court's decision in an administrative appeal, we review the agency order in the same manner. N.D.C.C. § 28–32–49; *Rodenbiker v. Workforce Safety & Ins.*, 2007 ND 169, ¶ 14, 740 N.W.2d 831; *Tverberg*, 2006 ND 229, ¶ 8, 723 N.W.2d 676. Application and interpretation of a statute is a question of law. *Rodenbiker*, at ¶ 15; *Rojas v. Workforce Safety & Ins.*, 2006 ND 221, ¶ 13, 723 N.W.2d 403. Questions of law are fully reviewable on appeal, and when there are no disputed issues of fact and only questions of law are presented on appeal, this Court must affirm the agency order unless it is not in accordance with the law. *Rodenbiker*, at ¶ 15; *Tedford v. Workforce Safety & Ins.*, 2007 ND 142, ¶ 7, 738 N.W.2d 29.

## III

[¶ 10] There are no disputed issues of material fact presented in this case. Resolution of the appeal turns upon interpretation of N.D.C.C. § 65–01–02(5)(b), particularly the 2003 amendment of the statute.

[¶ 11] The parties agree that Olson is entitled to disability benefits, and that those benefits must be calculated based upon Olson's average weekly wage at the time of his injury. Under our workers compensation law, "wages" is defined as "an employee's remuneration from all employment reportable to the internal revenue service as earned income for federal

income tax purposes." N.D.C.C. § 65–01–02(31).

■ [¶ 12] For purposes of determining disability benefits, a self-employed injured worker's "average weekly wage" is calculated in accordance with the formula set out in N.D.C.C. § 65–01–02(5)(b). Prior to 2003, that section provided:

The "average weekly wage" of a self-employed employee is determined by the following formula: one-fiftieth of the net profits based on the preceding tax year or preceding fifty-two weeks whichever is higher if accurate, reliable, and complete records for those fifty-two weeks are readily available, plus depreciation, meal and travel expenses, and any expenses chargeable to use of personal residence as allowed under the federal tax laws.

The 2003 Legislature amended that section to provide:

The "average weekly wage" of a self-employed employer is determined by the following formula: one fifty-second of the net earnings reported the preceding tax year or preceding fifty-two weeks whichever is higher if accurate, reliable, and complete records for those fifty-two weeks are readily available.

2003 N.D. Sess. Laws ch. 562, § 1. The parties agree that the 2003 version of the statute governs calculation of Olson's disability benefits for his April 8, 2005, injury.[1]

[¶ 13] The 2003 amendment, in addition to changing the multiplier for average weekly wage from one-fiftieth to one fifty-second, also changed the phrase "net profits based on the preceding tax year" to "net earnings reported the preceding tax year" and deleted the provision requiring that "depreciation, meal and travel expenses, and any expenses chargeable to use of personal residence as allowed under the federal tax laws" be added back in when calculating the injured worker's average weekly wage from self-employment. The parties dispute the effect of these changes. WSI contends "net earnings" is the equivalent of "net profit" as reported on Schedule C[2] of a self-employed worker's federal tax return, and that depreciation and other deductions may no longer be added back in when calculating average weekly wage. Olson counters that (1) there is no indication the legislature intended to drastically reduce disability benefits to self-employed workers; (2) "net earnings" and "net profits" are not equivalent; and (3) the legislature intended to decouple the calculation of average weekly wage from federal tax law and focus upon wages as shown by other accurate, reliable, and complete records, such as a profit and loss statement.

■ [¶ 14] Our primary goal when interpreting a statute is to ascertain the intent of the legislature. *Stephenson v. Hoeven*, 2007 ND 136, ¶ 14, 737 N.W.2d 260; *CybrCollect, Inc. v. North Dakota Dep't of Fin. Insts.*, 2005 ND 146, ¶ 23, 703 N.W.2d 285. We initially seek to ascertain legislative intent from the language of the statute itself, giving the words in the statute their plain, ordinary, and commonly understood meanings. *Stephenson*, at

---

1. The statute was again amended effective August 1, 2005, *see* 2005 N.D. Sess. Laws ch. 610, § 1, and currently provides:

   The "average weekly wage" of a self-employed employer is determined by the following formula: one fifty-second of the average annual net self-employed earnings reported the three preceding tax years or preceding fifty-two weeks whichever is higher if accurate, reliable, and complete records for those fifty-two weeks are readily available.

2. Schedule C is used to calculate and report profit or loss from a business.

¶ 14; *CybrCollect*, at ¶ 23. If a statute is ambiguous, extrinsic aids useful in construing the statute to determine legislative intent include the object sought to be obtained, the legislative history, and the administrative construction of the statute. *CybrCollect*, at ¶ 23.

[¶ 15] Reading the plain language of the statute in the context of the 2003 amendment, which expressly removed the provision requiring that certain business deductions and depreciation be added back in, we cannot agree with Olson's suggestion that some deductions are to be added to net profit from Schedule C to calculate average weekly wage. We can only conclude that the legislature intended that some other formula would apply to the determination of average weekly wage. That formula was delineated as one fifty-second of the injured employee's "net earnings reported the preceding tax year or preceding fifty-two weeks."

[¶ 16] The term "net earnings" is not defined in N.D.C.C. tit. 65, or elsewhere in the Century Code. We thus must give the term its plain, ordinary, and commonly understood meaning. Black's Law Dictionary states that "net earnings" is the same as "net income," which is defined as:

> Total income from all sources minus deductions, exemptions, and other tax reductions. Income tax is computed on net income.

*Black's Law Dictionary* 779 (8th ed.2004). We also note that, although perhaps representing a more specialized area of the law, federal regulations governing social security benefits similarly define "net earnings from self-employment" as total income less business deductions allowed under federal income tax law:

> *[N]et earnings from self-employment* means—

> (1) Your gross income, as figured under subtitle A of the Code, from any trade or business you carried on, less deductions attributed to your trade or business that are allowed by that subtitle; plus

> (2) Your distributive share of income (or loss) from a trade or business carried on by a partnership of which you are a member, as described in paragraph (b) of this section.

20 C.F.R. § 404.1080(a) (2007). These definitions indicate that the plain and ordinary meaning of "net earnings" is total income less allowable deductions, and is the equivalent of the amount upon which taxes are owed. In this case, that amount is Olson's net profit from his business as shown on Schedule C of his 2004 federal tax return.

[¶ 17] This interpretation is also supported by the legislature's inclusion of the phrase "reported the preceding tax year" in the 2003 amendment. In the prior version of the statute, the formula for average weekly wage was "one-fiftieth of the net profits *based on* the preceding tax year." In the 2003 version, the language is changed to "one fifty-second of the net earnings *reported* the preceding tax year." The amended language clearly suggests that the relevant figure is one that is "reported" on the claimant's tax return in the preceding year.

[¶ 18] The minimal legislative history available for the 2003 amendment also supports this interpretation. The 2003 amendment was introduced at the request of WSI, and the written testimony of Brent Edison, WSI's executive director at the time, stated:

> This section simplifies the formula for computing the "average weekly wage" of a self-employed employer. The purpose of this proposed change is to allow for ease of application as well as an average weekly wage that coincides with what is

reported to the IRS. The current formula requires a claims analyst to determine "net profits" and to add depreciation, meal, and travel expenses to the net profits. Eliminating this computation, and instead referring simply to net earnings reported to the IRS, will provide a more accurate reflection of the actual pre-injury wages earned by a self-employed worker.

*Hearing on H.B. 1060 Before the House Industry, Business, and Labor Comm.,* 58th N.D. Legis. Sess. (Jan. 21, 2003) (written testimony of Brent J. Edison) [*"House Hearing on H.B. 1060"*]; *Hearing on H.B. 1060 Before the Senate Industry, Business, and Labor Comm.,* 58th N.D. Legis. Sess. (Mar. 3, 2003) (written testimony of Brent J. Edison) [*"Senate Hearing on H.B. 1060"*]. The testimony indicates the amendment was intended to result in an average weekly wage "that coincides with what is reported to the IRS" and to eliminate the computation required when adding back in depreciation and business expenses.

[¶ 19] Olson's primary argument on appeal is his contention that the 2003 Legislature "clearly intended to move away from the calculation based upon the income tax returns of an individual but rather to the calculation of the net earnings based upon accurate, reliable, and complete records when available." Olson thus argues that his 2004 profit and loss statement, showing net earnings of $21,460, should be used to calculate his average weekly wage.

[¶ 20] Olson's argument is premised upon a misreading of the statute. The 2003 version of N.D.C.C. § 65–01–02(5)(b) provides that average weekly wage is "one fifty-second of the net earnings reported the preceding tax year or preceding fifty-two weeks whichever is higher if accurate, reliable, and complete records *for those fifty-two weeks* are readily available." The

reference to other "accurate, reliable, and complete records" applies only if the calculation is based on the preceding fifty-two weeks. If the preceding tax year is used as the relevant time frame, the statute expressly requires that the net earnings actually reported on the employee's tax return are to be used. An employee is not free to submit other records to show that his net earnings in the prior tax year were some higher amount than he actually reported and paid taxes on. In essence, the plain language of the statute provides that the default calculation is based upon the claimant's net earnings as shown on the preceding year's tax return, but the claimant may seek to have his average weekly wage calculated upon data from a more current fifty-two week period if it would show higher earnings based upon accurate, reliable, and complete records. Olson did not attempt to demonstrate that he had higher earnings in the immediately preceding fifty-two week period. All of the documents he submitted showing higher net earnings than his actual 2004 tax return were based upon the 2004 tax year.

[¶ 21] The language of the 2003 amendment and its legislative history also refute Olson's argument that the legislature "clearly intended to move away from the calculation based upon the income tax returns of an individual." The 2003 amendment changed the formula to net earnings *reported* the preceding tax year," indicating an intent to more closely tie the calculation of average weekly wage to the amount actually reported to the IRS on the claimant's preceding year's return. Furthermore, as previously noted, written testimony from WSI's executive director indicated part of the purpose of the 2003 amendment was to reach "an average weekly wage that coincides with what is reported to the IRS." *House Hearing on H.B. 1060; Senate Hearing on H.B. 1060.* Thus, rather than decoupling the calculation of average weekly wage from the

amount reported on the claimant's income tax return, the plain language of the statute and the legislative history of the 2003 amendment suggest that it was the intent of the legislature to more closely tie the determination of average weekly wage to the amount reported as income on the claimant's preceding year's tax return.

[¶ 22] Olson correctly points out that the legislative history does not demonstrate an intent to drastically reduce the average weekly wage of injured workers who are self-employed. We are concerned about the harsh consequences to self-employed workers resulting from the elimination of the add-back for business deductions under the plain language of the statute. Particularly troublesome is WSI's incomplete, and somewhat misleading, explanation of the intent and effect of the 2003 amendment in the executive director's written testimony in support of the bill. While claiming that the purpose of the amendment was to "simplif[y] the formula for computing the 'average weekly wage' of a self-employed employer" and "allow for ease of application" by "[e]liminating [the] computation" of the add-back of deductions, WSI did not explain that the practical effect of the change was a drastic reduction in the average weekly wage, and correspondingly in the disability benefits, of self-employed injured workers.[3] *House Hearing on H.B. 1060; Senate Hearing on H.B. 1060.* WSI's incomplete explanation of the effect of the amendment was compounded by the fact the 2003 amendment was part of a lengthy bill containing numerous unrelated changes. *See* 2003 N.D. Sess. Laws ch. 562.

[¶ 23] It is for the legislature, not the courts, to amend a statute if the plain language of the statute does not accurately reflect the legislature's intent. *State ex rel. Stenehjem v. FreeEats.com, Inc.,* 2006 ND 84, ¶ 12, 712 N.W.2d 828, *cert. denied,* —— U.S. ——, 127 S.Ct. 383, 166 L.Ed.2d 270. The function of the courts is to interpret the law, not to legislate, "regardless of how much we might desire to do so or how worthy an argument." *CybrCollect,* 2005 ND 146, ¶ 23, 703 N.W.2d 285; *Doyle v. Sprynczynatyk,* 2001 ND 8, ¶ 16, 621 N.W.2d 353. As we have noted, "[i]f the rule is wrong, the legislature has ample power to change it, but the duty of the judiciary is to enforce the law as it exists." *CybrCollect,* at ¶ 23; *see also Doyle,* at ¶ 16.

[¶ 24] We encountered a similar incidence of questionable or incomplete legislative testimony from a WSI representative in *Mikkelson v. North Dakota Workers Comp. Bureau,* 2000 ND 67, 609 N.W.2d 74. Noting that the written testimony concerning omission of language from a statute was "at best confusing or at worst misleading," we lamented that "it does not alter the reality that the language was omitted from the statute and that under our rules of statutory construction the omission leaves no ambiguity to resolve." *Id.* at ¶ 13 n. 1. We can only interpret the plain language of the statute and enforce the law as written. We therefore conclude that WSI did not misinterpret the statute and did not err in calculating Olson's average weekly wage.

## IV

[¶ 25] Olson contends WSI's interpretation of N.D.C.C. § 65–01–02(5)(b) violates his right to equal protection.

---

**3.** The full effect of the change is amply demonstrated in this case. Olson's average weekly wage under the 2003 statute has been calculated as $214. Under the prior statute, after adding back in the allowable deductions, Olson's average weekly wage would have been one-fiftieth of $43,777, or approximately $875.

[¶ 26] We have repeatedly cautioned a party making a constitutional claim must provide persuasive authority and reasoning, and without supportive reasoning or citations to relevant authorities an argument is without merit. *Riemers v. O'Halloran,* 2004 ND 79, ¶ 6, 678 N.W.2d 547; *New Town Pub. Sch. Dist. No. 1 v. State Bd. of Pub. Sch. Educ.,* 2002 ND 127, ¶ 17, 650 N.W.2d 813. This Court will only decide those issues which have been thoroughly briefed and argued, *State v. Norman,* 2003 ND 66, ¶ 22, 660 N.W.2d 549, and a party waives an issue by not providing adequate supporting argument. *Riemers,* at ¶ 6. A party must do more than submit bare assertions to adequately raise a constitutional issue. *Id.*

[¶ 27] Olson has submitted only bare, conclusory assertions to support his equal protection claim. He has therefore waived the issue and we decline to address it.

## V

[¶ 28] We have considered the remaining issues and arguments raised by the parties and we conclude that they are either unnecessary to our decision or are without merit.

[¶ 29] The district court judgment affirming WSI's final order is affirmed.

[¶ 30] STEVEN L. MARQUART, D.J., GERALD W. VANDEWALLE, C.J., CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

[¶ 31] The Honorable STEVEN L. MARQUART, D.J., sitting in place of CROTHERS, J., disqualified.