2017 ND 202

**Dawn VAIL, individually and as Trustee for North Dakota Workforce Safety & Insurance, Plaintiff**

v.

**S/L SERVICES, INC., Defendant**

**No. 20170011**

Supreme Court of North Dakota.

Filed 8/11/2017

Thomas J. Conlin (argued) and Stacy D. Stennes (appeared), Minneapolis, MN, for plaintiff.

Robert B. Stock (argued) and Jordan B. Weir (on brief), Fargo, N.D., for defendant.

McEvers, Justice.

[¶1] Under N.D.R.App.P. 47, a magistrate judge for the United States District Court for the District of North Dakota certified seven questions to this Court involving Dawn Vail's right to bring a common law tort action against S/L Services, Inc., for personal injuries she sustained while working for S/L Services. We conclude the exclusive remedy provisions of our workers' compensation laws do not preclude Vail's tort action against S/L Services under provisions authorizing the action for willfully misrepresenting to Workforce Safety and Insurance ("WSI") the amount of payroll upon which a premium is based, or for willfully failing to secure workers' compensation coverage for employees. We answer the certified questions accordingly.

I

[¶2] We briefly summarize the district court's statement of facts for the certified questions. On August 23, 2012, S/L Services, a Montana company, applied to WSI for workers' compensation coverage for workers in North Dakota. In the application, S/L Services estimated that in the next 12 months it would have 42 employees and total taxable wages of $976,500. On August 28, 2012, WSI issued S/L Services a premium statement charging an estimated premium for August 23, 2012 to August 31, 2013, which was based upon the num-

ber of employees that S/L Services reported and the employees' estimated wages. S/L Services paid that premium and WSI issued S/L Services a certificate of premium payment.

[¶3] After S/L Services paid the initial premium, Vail came to work for S/L Services as a welder's helper. Vail suffered a workplace injury on May 25, 2013. During her employment, S/L Services treated Vail as an independent contractor, and before she started work, she completed a tax form for independent contractors for the 2012 tax year and reported her compensation to the IRS using that form.

[¶4] Vail filed a claim for her injuries with WSI. WSI required S/L Services to complete a form asking for information about Vail's employment, including the dates of her employment, her hourly wage, and whether her work was full time, part time, or seasonal. The form also asked whether S/L Services was contesting the claim. S/L Services' response stated Vail was a subcontractor and not an employee. WSI thereafter required S/L Services to complete a worker relationship questionnaire to determine whether Vail was an employee or an independent contractor.

[¶5] In July 2013, WSI determined S/L Services was an employer of Vail and any similarly situated workers and awarded Vail related benefits. WSI's order required S/L Services to submit all wages for all employees, including Vail and any similarly situated employees, to WSI for the previous six years. WSI's order advised S/L Services that it had 30 days to seek reconsideration and, if reconsideration was not sought, the decision would become final. S/L Services did not seek reconsideration of WSI's decision within 30 days.

[¶6] On August 22, 2013, S/L Services submitted a payroll report to WSI for the period from August 23, 2012 to August 31, 2013. Despite WSI's prior order that S/L Services provide payroll information for Vail and others similarly situated, S/L Services did not include Vail's wages or the wages of other welder's helpers in that payroll report.

[¶7] On September 6, 2013, WSI issued S/L Services a premium billing statement in the amount of $26,737.23 for the period from August 23, 2012 to August 31, 2013. According to WSI's audit supervisor, WSI increased the adjusted total wages in its premium billing to reflect WSI's earlier determination that Vail was an employee and to include an amount for Vail's wages for that premium period. On September 12, 2013, S/L Services paid the requested amount of the billed premium for the billing period from August 23, 2012 to August 31, 2013.

[¶8] In November 2013, S/L Services asked WSI to reconsider its decision to classify Vail as an employee and pay her benefits, but the record does not reflect that WSI acted upon that request.

[¶9] In the first quarter of 2014, WSI audited S/L Services for the reporting period when Vail was injured, August 23, 2012 through August 31, 2013, as well as for S/L Services' current reporting period from September 1, 2013 to August 31, 2014. In June 2014, WSI informed S/L Services an additional premium for other welder's helpers was due for the period when Vail was injured and for the current period. S/L Services subsequently paid the additional premium.

[¶10] In November 2013, Vail filed a claim with the North Dakota Department of Labor for overtime pay based on her status as an employee. S/L Services contested the claim, contending Vail was an independent contractor and not an employee. In June 2014, the Department of Labor determined Vail was an employee and she

was entitled to overtime pay during her employment with S/L Services.

[¶11] Meanwhile, in January 2014, Vail, individually and as trustee for WSI, filed a tort action against S/L Services in federal district court for personal injuries she sustained while working for S/L Services. The federal district court initially denied S/L Services' motion to dismiss for failure to state a claim, concluding S/L Services' action in opening a WSI account in August 2012 before Vail's injuries and paying some premiums at that time did not preclude her from bringing a personal injury action against S/L Services. S/L Services later moved for summary judgment. The federal district court thereafter certified seven questions of law to this Court after determining they may be determinative of Vail's action under N.D.R.App.P. 47(a)(1). The federal court also invited this Court to reformulate any of the questions to address the issues raised by the questions.

## II

[¶12] The seven certified questions and the parties' arguments involve issues about employer immunity and an employee's exclusive or dual remedy for injuries occurring during the course of employment under our statutory provisions for workforce safety and insurance. Statutory interpretation is a question of law. *Mosser v. Denbury Res., Inc.*, 2017 ND 169, ¶ 13, 898 N.W.2d 406. The primary objective in interpreting statutes is to determine legislative intent, and that intent initially must be sought from the language of the statute. *Id.* Statutory provisions "are to be construed liberally, with a view to effecting its objects and to promoting justice." N.D.C.C. § 1-02-01. Statutory provisions are given their plain, ordinary, and commonly understood meaning unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. Words and phrases are construed according to the context in which they are used and technical words defined by statute must be construed according to the definition. N.D.C.C. § 1-02-03. Statutes are construed as a whole and harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. Statutes are construed to give effect to all of their provisions so no part of a statute is rendered inoperative or superfluous. N.D.C.C. § 1-02-38(2) and (4). "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. 1-02-05. If the language of a statute is ambiguous or of doubtful meaning, however, a court may resort to extrinsic aids to determine the intention of the legislation, including the object sought to be obtained, the circumstances under which the statute was enacted and the legislative history. N.D.C.C. § 1-02-39. "A statute is ambiguous if it is susceptible to differing but rational meanings." *Mosser*, at ¶ 13.

## III

[¶13] We briefly describe a worker's status as an employee or as an independent contractor under our workers' compensation law, and the parameters of an employee's exclusive or dual remedy for compensable injuries under that law.

[¶14] Under N.D.C.C. § 65-01-03(1), "[e]ach individual who performs services for another for remuneration is presumed to be an employee of the person for which the services are performed, unless it is proven that the individual is an independent contractor under the common-law test." *See Workforce Safety & Ins. v. Larry's On Site Welding*, 2014 ND 81, ¶¶ 15-22, 845 N.W.2d 310 (discussing common-law test for independent contractor under workers' compensation law). An entity asserting an individual is an independent

contractor and not an employee has the burden of proving that fact. N.D.C.C. § 65-01-03(1).

[¶15] If a worker is an employee, the Workforce Safety and Insurance Act generally provides the exclusive remedy for the employee who suffers a compensable injury. *Carlson v. GMR Transp., Inc.*, 2015 ND 121, ¶ 12, 863 N.W.2d 514. However, an employer must comply with the Act's requirements for the exclusive remedy provisions to apply. *Id.* Section 65-04-28, N.D.C.C., provides that "[e]mployers who comply with the provisions of this chapter shall not be liable to respond in damages at common law or by statute for injury to or death of any employee, wherever occurring, during the period covered by the premiums paid into the fund."

[¶16] Section 65-09-01(1), N.D.C.C., provides that an employer who violates the workers' compensation coverage requirements of N.D.C.C. § 65-04-33(1) or (2) "is not protected by the immunity from civil liability granted to employers under this title for injuries to that employer's employees for damages suffered by reason of injuries sustained in the course of employment." Under N.D.C.C. § 65-09-02, an employee injured during the course of employment whose employer is in violation of N.D.C.C. § 65-04-33 may file a claim with WSI for compensation "and in addition may maintain a civil action against the employer for damages" under the "dual remedies" language of that statute. *Gepner v. Fujicolor Processing, Inc.*, 2001 ND 207, ¶ 18, 637 N.W.2d 681. In the civil action, WSI is subrogated to the recovery against the uninsured employer and the employer may not assert defenses of the fellow servant rule, assumption of risk, or contributory negligence. N.D.C.C. § 65-09-02.

[¶17] Section 65-04-33, N.D.C.C., addresses the requirements and consequences for the failure of employers to secure workers' compensation coverage and provides, in relevant part:

1. An employer may not employ any person, or receive the fruits of the labor of any person, in a hazardous employment as defined in this title, without first applying for workforce safety and insurance coverage for the protection of employees by notifying the organization of the intended employment, the nature of the intended employment, and the estimated payroll expenditure for the coming twelve-month period.

2. An employer who willfully misrepresents to the organization or its representative the amount of payroll upon which a premium under this title is based, or who willfully fails to secure coverage for employees, is liable to the state in the amount of two thousand dollars plus three times the difference between the premium paid and the amount of premium the employer should have paid. ... An employer who willfully misrepresents to the organization or its representative the amount of payroll upon which a premium under this title is based, or who willfully fails to secure coverage for employees, is guilty of a class A misdemeanor. If the premium due exceeds five hundred dollars, the penalty for willful failure to secure coverage or willful misrepresentation to the organization or its representative is a class C felony.

[¶18] A district court in which a tort action is filed has authority to determine whether the action is barred by the exclusive remedy provisions of the workers' compensation act. *Carlson*, 2015 ND 121, ¶ 15, 863 N.W.2d 514. In an employee's tort action against an employer to recover damages for a work-related injury, the employer has the burden of establish-

ing by a preponderance of the evidence the defense that the employer is immune from suit under the exclusive remedy provisions of the workers' compensation act. *Id.*

## IV

[¶19] The federal district court's first three certified questions generally address "whether Vail has any claim for a violation of [N.D.C.C.] § 65-04-33(2) such that, if she is able to prove a violation, she can pursue her common law claim of negligence against S/L Services for her workplace injury." Those three questions provide:

1. In this case, where Vail was an employee as a matter of law at all times she worked for S/L Services but S/L Services (a) treated Vail on its payroll and otherwise as an independent contractor prior to her workplace injury, (b) thereafter opposed Vail's claim for workers' compensation benefits on the basis that she was not an employee, and (c) omitted Vail's wages from its premium payroll report in August 2013 (even after being told by WSI in July 2013 that it needed to include Vail as an employee) may (a), (b), and/or (c), either independently or in combination with one another, serve as a failure "to secure coverage for employees" for purposes of N.D.C.C. § 65-04-33(2) if done willfully within the meaning of that section, even if S/L Services later paid a premium that included consideration of Vail's wages for the period in which she was injured after WSI demanded it do so?

2. In this case, where Vail was an employee as a matter of law at all times she worked for S/L Services but S/L Services (a) treated Vail on its payroll and otherwise as an independent contractor prior to her workplace injury, (b) thereafter opposed Vail's claim for workers' compensation benefits on the basis that she was not an employee, and (c) omitted Vail's wages from its premium payroll report in August 2013 (even after being told by WSI in July 2013 that it needed to include Vail as an employee) may (a), (b), and/or (c), either independently or in combination with one another, serve as a misrepresentation of the "amount of payroll upon which a premium under this title is based" for purposes of N.D.C.C. § 65-04-33(2) if done willfully within the meaning of that section, even if WSI calculated the premium for the period during which Vail was injured using Vail's wages and S/L Services paid that premium?

3. In this case, where S/L Services failed to include in its wage report for the August 2012–August 2013 premium period the wages of some six or seven welder's helpers who were similarly situated to Vail and whose wages were *not* included in WSI's calculation and billing for that premium period, but were later included in a subsequent billing by WSI following a 2014 audit and paid by S/L Services at that time, can the failure on the part of S/L Services to include the wages of these other welder's helpers in the August 2012–August 2013 wage report constitute a violation of § 65-04-33(2), if it was done willfully within the meaning of that section, and can Vail rely upon that alone to support a claim that S/L Services has lost its immunity from a common law suit for damages for her workplace injury?

[¶20] Vail argues that an employer's misclassification of employees as independent contractors can be both a willful failure to secure coverage for employees and a willful misrepresentation of payroll under N.D.C.C. § 65-04-33(2) and that an

employer cannot simply pay previously unpaid premiums attributable to employees after an injury to gain the benefit of immunity from an employee's civil action for damages. S/L Services responds it is immune from liability in Vail's civil action for injuries because it mistakenly determined Vail was an independent contractor and estimated its payroll in good faith at all relevant times under our workers' compensation law and ultimately paid premiums owed for Vail and other welder's helpers.

[¶21] Under the plain language of N.D.C.C. § 65-04-33(2), an employer may not willfully misrepresent to WSI the amount of payroll used to calculate premiums, or willfully fail to secure coverage for employees. The language of N.D.C.C. § 65-04-33 initially requires an employer to report the estimated payroll expenditures for the coming twelve-month reporting period to calculate premiums and to secure coverage for employees. At the end of a premium period, an employer is statutorily required to correct the estimated expenditures for wages to reflect the actual expenditures for wages during that period. N.D.C.C. § 65-04-16. Under the language of N.D.C.C. § 65-09-01, employers violating the provisions of N.D.C.C. § 65-04-33 are not protected by immunity from civil liability for an employee's injuries sustained in the course of employment. See also N.D.C.C. § 65-04-28 (employers complying with N.D.C.C. ch. 65-04 shall not be liable to respond to damages at common law or by statute for injury or death to any employee, wherever occurring, during the period covered by premiums paid into the fund). Under N.D.C.C. § 65-09-02, an injured employee whose employer violates N.D.C.C. § 65-04-33 has a dual remedy to obtain a compensation award under N.D.C.C. title 65 and to maintain a civil action against the employer. See Gepner, 2001 ND 207, ¶ 18, 637 N.W.2d 681.

[¶22] In Gepner, 2001 ND 207, ¶ 21, 637 N.W.2d 681, this Court discussed the legislature's intent in authorizing the dual remedy of a tort action against a noncomplying employer:

The civil action created under N.D.C.C. § 65-09-02 is in the nature of a tort action, and allows the employee to recover damages resulting from the injury. The legislative history to the 1995 amendment to N.D.C.C. § 65-09-02, which created the separate civil action against the noncomplying employer, clarifies that it is a personal injury lawsuit, not limited to the remedies available under the Workers Compensation Act:

The Bill provides that an employee of an uninsured employer may file and receive workers compensation benefits *and in addition* may maintain a lawsuit against the uninsured employer for damages caused by the injury. ... The threat of personal injury lawsuits and potentially large damage awards should provide uninsured employers with ample incentive to request and pay for the protections of workers compensation coverage and the exclusive remedy, instead of taking their chances on being uninsured.

*Hearing on H.B. 1329 Before the House Industry, Business and Labor Comm.*, 54th N.D. Legis. Sess. (Jan. 23, 1995) (testimony of Robert W. Morris, Assistant Attorney General, representing the Workers Compensation Bureau). Accordingly, under N.D.C.C. § 65-09-02, a noncomplying employer is liable in a civil action for all damages resulting from the work injury, and those damages are to be determined under the standards and measures applicable in traditional tort-based personal injury actions.

[¶23] Section 65-09-01(2), N.D.C.C., authorizes an administrative mechanism to determine whether a person is an employer required to obtain workers' compensation coverage under N.D.C.C. title 65. Under N.D.C.C. § 65-04-22.1, if WSI determines an independent contractor with a valid identification number issued by the Labor Commissioner under N.D.C.C. § 34-05-01.4 is an employee for purposes of workforce safety and insurance premiums, WSI may not require the employer to retroactively pay any interest, penalty or delinquency fee to the date the employment relationship began unless WSI decides the employer entered the relationship willfully and intentionally with the purpose of avoiding payment of premiums. Section 65-02-25, N.D.C.C., grants an employer amnesty from criminal prosecution under certain conditions for willfully misrepresenting payroll.

[¶24] When those statutory provisions are construed together in conjunction with the purpose of providing employers with an incentive to request and pay for the protection of workers' compensation coverage and the exclusive remedy afforded by that coverage, we conclude those provisions do not absolve an employer from civil liability if an employer willfully misrepresents payroll or willfully fails to secure coverage for employees and later procures workers' compensation coverage for an employee for the period during which the employee was hurt. Although an employer may be entitled to amnesty from criminal prosecution in some circumstances under N.D.C.C. § 65-02-25, an employer is statutorily obligated to correct inaccurate estimates of wages during a previous reporting period under N.D.C.C. § 65-04-16 and nothing in the language of N.D.C.C. title 65 provides an employer with immunity for complying with that statutory obligation after an employee is injured. An employer's ignorance of the reporting requirements is not a defense. *See Berg v. Hogan*, 322 N.W.2d 448, 452 n.1 (N.D. 1982) (stating ignorance of law or regulation is not valid defense to enforcement of law); *Lumpkin v. Streifel*, 308 N.W.2d 878, 880-81 (N.D. 1981) (same).

[¶25] We have often said the function of the courts is to interpret the law as written, and if the plain language of a statute does not accurately reflect the legislature's intent, it is for the legislature, not the courts, to amend the statutory language. *E.g., Olson v. Workforce Safety & Ins.*, 2008 ND 59, ¶ 23, 747 N.W.2d 71. If an employer willfully misrepresents payroll or willfully fails to provide coverage for employees under N.D.C.C. § 65-04-33(2), we conclude the plain language of that statute does not provide an employer with a defense for complying with the statutory requirement for subsequent payment of a premium for a period in which an employee was injured. We answer "yes" to certified questions 1 and 2.

[¶26] Question 3 asks whether there can be a violation of N.D.C.C. § 65-04-33(2) if S/L Services willfully failed to include the wages of other welder's helpers in its wage report for the initial premium period and whether Vail could rely upon that alone to support a claim that S/L Services lost its immunity from a common law suit for damages for Vail's workplace injury.

[¶27] On the facts recited by the federal court, we conclude S/L Services' failure to include the wages of other welder's helpers in its wage report for the initial premium period, if willful, can be a violation of N.D.C.C. § 65-04-33(2). Vail is in the category of workers identified as welder's helpers, and assuming S/L Services' conduct is willful, nothing in the plain language of our workers' compensation laws evidences an intent to allow S/L Services

to assert immunity from a common law tort action for damages for her workplace injury under these circumstances. We answer "yes" to question 3.

## V

[¶28] The federal court explained the final four certified questions "address [N.D.C.C.] § 65-04-33(2)'s scienter requirement in terms of what must be proved by Vail to make out a claim of violation of the statute, particularly in the context of when an employer had purposefully treated a person who lawfully was an employee as an independent contractor." Those questions are:

4. In order to prove a violation of § 65-04-33(2), is Vail required to demonstrate that S/L Services knew at the time it engaged in the conduct that Vail claims amounts to a violation that she or any of the other workers similarly situated were employees as a matter of law and entitled to workers' compensation coverage?

5. In proving a violation of § 65-04-33(2), can Vail satisfy the statute's scienter requirement if she proves that S/L Services acted in reckless disregard of the fact that she and any other workers similarly situated were employees as a matter of law and entitled to worker's compensation coverage at the time it engaged in the prohibited conduct?

6. In proving a violation of § 65-04-33(2), can Vail satisfy its scienter requirement by proving only that S/L Services intentionally, and not inadvertently, committed an act prohibited by the statute and not prove any other state-of-mind, including that S/L Services had knowledge of the relevant obligations imposed on an employer under the worker's compensation laws, that S/L Services knew that Vail was an employee as a matter of law, that S/L Services intended to deceive WSI or otherwise violate the law, or that S/L Services acted in reckless disregard of the law's requirements or that Vail was an employee as a matter of law?

7. Can S/L Services avoid a finding of a violation of § 65-04-33(2) if it can be demonstrated that, at the time it engaged in the conduct that is alleged to have constituted a violation, it believed in good faith that Vail or other similarly situated workers were not employers as a matter of law, even though that belief was mistaken?

[¶29] Vail argues an employer's willful misrepresentation of its payroll or willful failure to secure coverage for employees triggers an injured worker's right to bring a civil action against the employer for injuries and an employer's actions are willful when its actions are intentional and not inadvertent, regardless of the employer's motives or ignorance of the law.

[¶30] S/L Services responds a willful misrepresentation requires evidence of knowledge of objective facts and intentionally making a knowingly false statement to WSI. S/L Services essentially argues the scienter element requires proof the employer knew the worker was an employee as a matter of law, or that an employer can avoid liability by showing it proceeded in a good faith belief the worker was not an employee.

[¶31] This Court has said willful conduct under N.D.C.C. § 65-04-33(2) is " 'conduct engaged in intentionally and not inadvertently.' " *Muldoon v. N.D. Workforce Safety & Ins. Fund*, 2012 ND 244, ¶ 13, 823 N.W.2d 761 (quoting *Forbes v. Workforce Safety & Ins. Fund*, 2006 ND 208, ¶ 13, 722 N.W.2d 536). *See also Carlson*, 2015 ND 121, ¶ 18, 863 N.W.2d 514.

This Court has also said " '[a] state of mind can rarely be proven directly and must usually be inferred from conduct and circumstantial evidence.' " *Muldoon*, at ¶ 13 (quoting *Forbes*, at ¶ 13). Whether conduct is willful is generally a question of fact for the trier of fact. *Carlson*, at ¶ 20.

[¶32] In *Hausauer v. N.D. Workers Comp. Bureau*, 1997 ND 243, ¶ 14, 572 N.W.2d 426, this Court said "willfully" under N.D.C.C. § 65-05-33, a statute dealing with an employee willfully filing a false claim for coverage, does not require an intent to defraud by knowingly misrepresenting, misstating, or failing to disclose any material fact and merely requires proof a false statement was intentionally made in connection with any claim or application. This Court has consistently applied that definition of willfully to proceedings involving employee's willfully filing false claims. *See Forbes*, 2006 ND 208, ¶ 13, 722 N.W.2d 536; *Horob v. N.D. Workers Comp. Bureau*, 2000 ND 114, ¶ 14, 611 N.W.2d 875; *Renault v. N.D. Workers Comp. Bureau*, 1999 ND 187, ¶ 10, 601 N.W.2d 580; *Hopfauf v. N.D. Workers Comp. Bureau*, 1998 ND 40, ¶ 13, 575 N.W.2d 436; *Dean v. N.D. Workers Comp. Bureau*, 1997 ND 165, ¶ 15, 567 N.W.2d 626; *FO.E. Aerie 2337 v. N.D. Workers Comp. Bureau*, 464 N.W.2d 197, 201 (N.D. 1990).

[¶33] In other circumstances involving an employer's treatment of independent contractors who have a valid identification number issued by the Labor Department under N.D.C.C. § 34-05-01.4, the legislature has provided a different scienter requirement for the employer's actions. *See* N.D.C.C. § 65-04-22.1 (stating employer not required to retroactively pay premiums for certain independent contractors unless employer willfully and intentionally entered relationship with purpose of avoiding Workforce Safety and Insurance premium payments). The legislature has not provided for a different scienter requirement when there has been no determination of independent contractor status by the Labor Department such as in this case, and we decline S/L Services' invitation to engraft additional provisions into the plain language of N.D.C.C. § 65-04-33(2). *See Olson*, 2008 ND 59, ¶ 23, 747 N.W.2d 71 (stating it is for legislature, not courts, to amend statutory language).

[¶34] We conclude this Court's well-established interpretation of willfully in the context of workers' compensation law applies to this case. Under that interpretation of willfully, Vail must show that S/L Services intentionally and not inadvertently misrepresented the amount of payroll upon which a premium under this title is based, or intentionally and not inadvertently failed to secure coverage for employees. That interpretation does not require Vail to prove that S/L Services knew about its obligations under the workers' compensation law, that S/L Services knew Vail or other similarly situated workers were employees, that S/L Services intended to deceive WSI or violate the law, or that S/L Services acted in reckless disregard of statutory requirements or the fact she or other similarly situated workers were employees. Moreover, under that definition of willfully, an employer's ignorance of the law or good faith belief a worker is not an employee does not preclude a finding of a willful violation of N.D.C.C. § 65-04-33(2).

[¶35] We answer "no" to questions 4, 5, and 7, and "yes" to question 6.

VI

[¶36] We answer the certified questions as stated in this opinion.

[¶37] Lisa Fair McEvers

Jerod E. Tufte

Gary H. Lee, D.J.

Michael G. Sturdevant, S.J.

Gerald W. VandeWalle, C.J.

[¶38] The Honorable Gary H. Lee, D.J., and Michael G. Sturdevant, S.J., sitting in place of Kapsner, J., and Crothers, J., disqualified.