Filed 1/30/01 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2001 ND 11

Sidney Nord, Joyce Nord, Lyder 

Nord, and Gloria M. Nord, Plaintiffs and Appellees

v.

David Herrman and Richard Herrman,                            Defendants and Appellants

and

 

Arlen Peterson,    Intervenor and Appellant 

No. 20000063

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Lee A. Christofferson, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Todd A. Schwarz (on brief), Wheeler Wolf, P.O. Box 2056, Bismarck, N.D. 58502-2056, for plaintiffs and appellees.

J. Thomas Traynor, Jr. (on brief), Traynor, Rutten & Traynor, P.C., P.O. Box 838, Devils Lake, N.D. 58301-0838, for defendants, intervenor, and appellants.

Nord v. Herrman

No. 20000063

Sandstrom, Justice.

[¶1] David Herrman, Richard Herrman, and Arlen Peterson appealed from a judgment in a quiet title action entered after our remand in 
Nord v. Herrman
, 1998 ND 91, 577 N.W.2d 782 (“
Nord I
”).  The trial court apportioned the property interests of Peterson, the Herrmans, and Sidney, Joyce, Lyder, and Gloria Nord to a portion of the 1992 shoreline of Devils Lake’s East Bay, and awarded the Nords $2500 for property damages.  We conclude the trial court’s method of apportioning the property boundaries adequately satisfies the legal requirement of proportional allocation, and its award of damages is not clearly erroneous.  We affirm.

I

[¶2] The factual background of this case is set forth in 
Nord I
 and need not be repeated here.  In 
Nord I
, the trial court was called upon to determine property boundaries below the meander line at a time when the waters of Devils Lake were receding.  The court relied on a method to apportion new property lines between the parties that was based on this Court’s decision in 
North Shore, Inc. v. Wakefield
, 530 N.W.2d 297 (N.D. 1995).  David Hovendick, the expert witness for the Herrmans and Peterson, had advocated an alternative use of the “colonial” or “tide water” method of apportionment, and testified use of the 
North Shore
 method would, under the circumstances, deny the Herrmans and Peterson any access to the lake.  We held:

North Shore
 and 
Gardner [v. Green
, 67 N.D. 268, 271 N.W. 775 (1937),] require allocation of the new shoreline in proportion to each owner’s share of the original shoreline.  The method of extending section lines and government lot survey lines approved in 
North Shore
 adequately met the legal requirement of proportional allocation.  But to simply use the 
North Shore
 method to extend a quarter section line in a manner that deprives landowners of a proportional allocation in the new shoreline is not consistent with the 
North Shore
 and 
Gardner
 requirement of proportional allocation.

. . . .

We do not hold the trial court was required to use Hovendick’s proposed colonial method for proportional allocation in this case, even though it appears to more closely achieve the proportional allocation of the shoreline requirement than does the method used by the trial court.  We only hold the method used by the trial court here, which has deprived some owners of any proportional allocation of the shoreline, was erroneous as a matter of law.  We remand for further proceedings to achieve proportional allocation of the new shoreline.  Because the $2,500 damage award was based on this improper proportional allocation, the award must be reversed.

Nord I
, 1998 ND 91, ¶¶ 23, 25, 577 N.W.2d 782.

[¶3] At another evidentiary hearing on remand, Hovendick again testified as an expert witness for the Herrmans and Peterson, and Harley Swenson testified as an expert witness for the Nords.  The trial court again rejected Hovendick’s proposal based on the colonial method, and chose the method advocated by Swenson.  The court ruled:

By use of the survey notes from the original survey of the property, the south boundary of Lot Four (4) which is the south boundary of the Nord property shall be extended in a straight line due west to the water’s edge when the land was patented in 1883, which was an elevation of 1434.4 feet above median sea level.

. . . .

After the above extension of the Lot Four (4) boundary to the west, the court next adopts the use of parallel lines running westward from the meander line to extend each property line to the 1434.4 feet level as illustrated on Plaintiff’s Exhibit #5.  From the point where the parallel lines reach the 1883 shoreline, each property owner shall receive a proportional allocation of the 1992 shoreline as illustrated in Plaintiff’s Exhibit #5.  Exhibit #5 shall be incorporated into this Conclusion of Law.
(footnote: 1)

. . . .

The extension of government lot lines to the 1883 survey water’s edge with parallel boundary lines for each property owner to the 1883 water’s edge and then providing a proportional amount of 1992 shoreline based on the amount of 1883 shoreline each property owner receives meets the legal requirements of proportional allocation of the new shoreline as established by North Dakota case law.

The court also ruled $2500 was an appropriate amount to award the Nords for damage to their property.

[¶4] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C.  § 27-05-06.  The appeal by the Herrmans and Peterson is timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28-

27-01.

II

[¶5] The Herrmans and Peterson argue the trial court erred in adopting Swenson’s method of apportioning the 1992 shoreline.

[¶6] Any division of accretions must be equitable and proportional so as to give each shore owner a fair share of the land to be divided and a due portion of the new shore line proportionate to the shore on the original line of the water.  
See
 
Nord I
, 1998 ND 91, ¶ 18, 577 N.W.2d 782; 
North Shore
, 530 N.W.2d at 303.  Any survey method that results in equitable allocation of the new shoreline in proportion to each owner’s share of the original shoreline will satisfy the legal requirement of proportional allocation.  
Nord I
, at ¶¶ 23, 25.

[¶7] The weight and credibility given to an expert’s opinion is a question of fact subject to the clearly erroneous standard of N.D.R.Civ.P. 52(a).  
In re J.K.
, 1999 ND 182, ¶ 13, 599 N.W.2d 337.  A trial court’s findings of fact are clearly erroneous if they are induced by an erroneous view of the law, there is no evidence supporting them, or, although there is some evidence supporting them, on the entire record we are left with a definite and firm conviction a mistake has been made.  
Tulintseff v. Jacobsen
, 2000 ND 147, ¶ 16, 615 N.W.2d 129. 

[¶8] In this case, much of the dispute between the expert witnesses centered on where to begin the process of equitable apportionment.  Hovendick advocated beginning the process at the meander line, resulting in the Nords, the Herrmans, and Peterson each receiving a larger amount of 1992 lakefront footage.  Swenson advocated beginning the process at the 1883 shoreline elevation of 1,434.4 feet, resulting in a smaller amount of 1992 lakefront footage for the parties.  Swenson testified his proposal was consistent with the 
North Shore
 method, and Hovendick’s method inappropriately applied “accretion rules to land that is not accreted land.”  Swenson also testified Hovendick’s proposal was unfair because the property lines would encroach upon property belonging to persons not parties in this proceeding, whereas his method “doesn’t encroach onto adjacent property owners.”  Hovendick admitted the colonial method he proposed had never been used in North Dakota, but testified the colonial method would work all around Devils Lake and would “guarantee equitable apportionment to all property owners that abut up against the meander line as it was laid out.”  Hovendick acknowledged use of the colonial method around the entire lake would require a redrawing of the boundary lines approved by this Court in 
North Shore
.

[¶9] The trial court questioned Swenson about the difference between his proposal and the one this Court rejected in 
Nord I
:

THE COURT: So from your opinion and your comprehension, that is the error this court made in it[]s first determination, it didn’t extend the line out to the 1434.4 elevation but only to the 1426.

. . . . 

THE WITNESS: Well, it’s my opinion that it should be at 1434.4 elevation and I think I’ve testified - -

THE COURT:  - - I understand why, you’ve said that, but I did not use that.  I used the standard of 1426 which was the lakebed elevation of the ordinary high watermark.

THE WITNESS: It’s my opinion that everything below the elevation at the time the land was patented which was in 1883 which was an elevation of 34.4, the land below that elevation is subject to the laws and rules of accretion.  And that would mean proportioning new shore line and proportioning the owner, based on the ownership, at the elevation of 1434.4.  It’s all accreted property below that elevation.  And you were right in extending the land lines to that point.  Where I guess I would differ from your decision is that at that point I would start applying the laws of accretion.

[¶10] Swenson testified his method and the colonial method would “give you very similar results in this particular case” and would “do an equitable job of dividing the accretion. . . .”  Hovendick testified Swenson’s method gave the Nords 237 feet of 1992 lakefront footage and Hovendick’s method would give the Nords 341 feet.  Hovendick also testified Swenson’s method gave the Herrmans and Peterson 67 feet of 1992 lakefront footage, while Hovendick’s method would give them “over a hundred feet.”

[¶11] In rejecting Hovendick’s proposal, the trial court noted the meander line is not the legal property boundary as established by survey treatises and case law, but is merely a means to determine the size of a body of water and to describe a particular tract of land.  
See
 
Nord I
, 1998 ND 91, ¶ 16, 577 N.W.2d 782; 
North Shore
, 530 N.W.2d at 301.  The court also noted the 1883 survey notes were available and “must become a part of the determinable water’s edge and land boundary of this disputed property.”  The court reasoned:

The Court declines to use the Hovendick proposal because it ignores the survey notes, and our case law.  It does not recognize the first deed to property as superior, the natural extension of government lot lines nor the riparian rights granted to the upland owner as established in earlier decisions.  While the Hovendick proposal seems a simple fix to the rise and fall of the lake level which plagues this property, simple solutions are not the best solution when it is contrary to our established law.  If the meander line is to become a legal boundary for Devils Lake shore owners, it must be established by other than this trial court.

[¶12] The methods advanced by both of the expert witnesses grant the parties proportional allocation of the 1992 shoreline.  When a trial court is faced with conflicting opinions by expert witnesses for the parties, and the court could have relied on either party’s expert witness, the court’s choice between the two permissible views of the weight of the evidence is not clearly erroneous.  
Johnson v. Hamill
, 392 N.W.2d 55, 59 (N.D. 1986).  On this record, we cannot say the trial court’s adoption of Swenson’s method of apportionment is clearly erroneous, and we conclude the plan adopted by the court adequately satisfies the legal requirement of proportional allocation.

[¶13] The Herrmans and Peterson argue adoption of Swenson’s method results in a judgment that is not final, clear, or definite because his method applies only to the water level in 1992 when this action was commenced.  Because Devils Lake rises and falls, they argue property lines would have to be redrawn periodically, resulting in further litigation if the parties failed to reach an agreement.  However, changes in property boundaries caused by rising and falling waters is a natural consequence of riparian land ownership.  In 
North Shore, Inc. v. Wakefield
, 542 N.W.2d 725, 729 (N.D. 1996) (internal citations omitted), this Court said “[r]iparian landowners are by necessity subject to losses and gains caused by the water; under well-established principles of law a riparian landowner ‘“is without remedy for his loss in this way [and] cannot be held accountable for his gain.”’”   It is the nature of riparian land ownership, not the trial court’s use of Swenson’s method of apportionment, which makes the judgment appear to be non-final or indefinite.

[¶14] In 
Nord I
, at ¶ 24, we noted “a proper determination of the dispute between these three parties may require joinder of most, if not all owners around the lake.”  Contrary to our caveat, the parties did not believe a class action was necessary, and, contrary to our caveat, the trial court said a class action would not be “practical.”  Consequently, the trial court’s judgment is limited to affecting only the property interests of the Nords, the Herrmans, and Peterson among themselves.  
See
 
Woodland v. Woodland
, 147 N.W.2d 590, 602 (N.D. 1966).  The judgment is not binding on other property owners in the area who were not made parties to this action and who might have a claim to the subject property.  
Id.

III

[¶15] The Herrmans and Peterson argue the trial court erred in awarding the Nords damages for injury to the Nord’s property.  The Nords requested almost $37,000 in damages, but the trial court awarded them only $2500 “for destruction of surface structures.”

[¶16] In an appeal challenging a trial court’s award of damages in a bench trial, the appropriate standard of review is whether the trial court’s findings of fact on damages are clearly erroneous.  
See
 
Roise v. Kurtz
, 1998 ND 228, ¶ 6, 587 N.W.2d 573.  During the infancy of this boundary dispute, David Herrman admitted cutting down trees, which had formed a property boundary, and he and Peterson admitted taking down a boundary fence constructed by the Nords.  The trial court also found Herrman and Peterson pushed large rocks from the front of their lots over to the Nords’ property.  Under the method the trial court used to apportion the property, the actions of Herrman and Peterson damaged the Nords’ property.

[¶17] We conclude the trial court’s award of $2500 to the Nords for property damage is not clearly erroneous.

IV

[¶18] The judgment is affirmed.

[¶19] Dale V. Sandstrom

William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
Plaintiff’s Exhibit #5 appears in the Appendix.