2010 ND 144

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Charles BLUNT, Defendant and Appellant.**

**No. 20090110.**

Supreme Court of North Dakota.

July 16, 2010.

Cynthia Mae Feland (argued) and Lloyd Clayton Suhr (on brief), Assistant State's Attorneys, Bismarck, N.D., for plaintiff and appellee.

Michael Ray Hoffman, Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Charles Blunt appeals from an order deferring imposition of sentence entered upon a jury verdict finding him guilty of misapplication of entrusted property. We affirm.

I

[¶ 2] Blunt was the Executive Director of Workforce Safety and Insurance ("WSI") from 2004 to 2007. The State Auditor's Office conducted a performance review of WSI in 2006. The Auditor's report questioned the use of public funds at WSI, noting more than $18,000 in expenditures which allegedly failed to comply with constitutional provisions, state law, and policies of the Office of Management and Budget. *See State v. Blunt,* 2008 ND 135, ¶ 2, 751 N.W.2d 692.

[¶ 3] As a result of the Auditor's report, Blunt was charged with two counts of misapplication of entrusted property in violation of N.D.C.C. § 12.1–23–07(1). Count I charged Blunt with a class B felony for misapplying more than $10,000 in WSI funds for gift certificates given to WSI employees; food, beverages, flowers, balloons, decorations, costume rentals, ornaments, and gifts for WSI meetings; and food and convention expenses provided to legislators. *See* N.D.C.C. § 12.1–23–07(2)(a) (misapplication of entrusted property exceeding $10,000 is a class B felony). Count II charged Blunt with a class C felony for misapplying more than $500 in WSI funds for illegal bonuses paid to three high-ranking WSI executives. *See* N.D.C.C. § 12.1–23–07(2)(b) (misapplication of entrusted property exceeding $500 but less than $10,000 is a class C felony).

[¶ 4] Following a preliminary hearing, the district court concluded the State had failed to establish probable cause and dismissed the complaint. We reversed and remanded on appeal, concluding "the district court erred in concluding there was not probable cause to believe that an offense had been committed or that Blunt had committed it." *Blunt*, 2008 ND 135, ¶ 32, 751 N.W.2d 692.

[¶ 5] On remand to the district court, the State filed an information and Blunt was arraigned. After the arraignment Blunt filed numerous motions, including a motion for a bill of particulars. In its response to this motion, the State noted, in addition to evidence of the gift certificates, meeting expenses, expenditures on legislators, and employee bonuses, it intended to present evidence at trial that Blunt: (1) had illegally authorized payment of sick leave to a WSI executive who was resigning but was not sick; (2) had failed to recoup relocation expenses owed to WSI by this same executive; and (3) had illegally committed $150,000 in grant money to the North Dakota Firefighter's Association under a grant program that did not exist.

[¶ 6] Prior to trial, Blunt moved to bar the State from aggregating the value of multiple items misapplied so as to reach the $10,000 threshold for a class B felony, arguing that each item allegedly misapplied was a separate offense. He requested the district court rule that only an individual item allegedly exceeding $10,000 is relevant to prove a class B felony. The district court ruled that the State was allowed to include the value of all items misapplied to reach the grading thresholds under N.D.C.C. § 12.1–23–07(2).

[¶ 7] The case was tried to a jury. At the close of the State's case-in-chief, Blunt moved for a judgment of acquittal under

N.D.R.Crim.P. 29. The district court concluded the State had presented insufficient evidence to go to the jury on the allegations regarding the grant money, but "everything else" should go to the jury:

> The grant program. . . . I'm going to grant the motion in regards to the grant program. We'll have to figure out how to address that. But that amount will not be considered by the Jury, as I'm going to dismiss that portion of the allegation, is one way to put it, I guess. . . .
>
> So, I guess, I don't—I'm finding there is insufficient evidence for that portion of it to go to the Jury. But everything else is going to stay. So simply, that portion will be out. But we'll go forward on the others with that, then.

After the district court ruled on Blunt's N.D.R.Crim.P. 29 motion, the State questioned whether the court could dismiss only that part of the charge in Count I involving the grant money and argued that the entire count should be submitted to the jury. The following colloquy then occurred between the court and the attorney for the State:

> THE COURT: But, guess what, that's the way it is. I mean, I don't think you proved that portion of it. You charge it out that way. If I say, oh, that can go forward, too, where am I at when they come back guilty? . . . .
>
> . . . .
>
> THE COURT: So I think it's appropriate and it's carved out of there. I'm going to say they can't consider that amount . . . in coming to a conclusion on Count I.
>
> MS. FELAND: So then am I under the understanding it is part of the Court's ruling, since the Court has said that there will be no comment about

that, that includes comments from either side? So there is no discussion about the grants for all practical purposes, as if it never existed as part of this charge. It that what I'm understanding?

THE COURT: It is going to be in the closing instructions that they can't consider those amounts.

[¶ 8] At the close of all the evidence, Blunt moved the court "to enter the judgment of acquittal granted as to Count I" under N.D.R.Crim.P. 29, and the State again argued that the grant money allegations should be submitted to the jury. The district court again denied Blunt's motion on all allegations other than the grant money and reiterated its conclusion:

> I'm indicating there is insufficient evidence to go before the Jury to find a conviction on the Firemens Fund grant program as an offense. And that's how I'm going to rule. And I'm going to issue an instruction along those lines that they are not ·to consider that in considering Count I.

In its closing instructions, the court instructed the jury:

### Evidence not Considered

As a matter of law, the Court has determined, you are not to consider any evidence of the Fireman's grant funds in reaching your verdict.

[¶ 9] The jury found Blunt guilty on Count I and not guilty on Count II. Blunt filed a post-trial motion, arguing that the district court's granting of a part of his N.D.R.Crim.P. 29 motion for judgment of acquittal required acquittal on all of Count I. The court denied the motion. The court entered an order deferring imposition of sentence, and Blunt appeals.

[¶ 10] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 29–01–12 and 29–28–06.

## II

[¶ 11] Blunt contends the district court erred when it did not grant a judgment of acquittal on all of Count I after concluding there was insufficient evidence to allow allegations regarding the grant money to go to the jury. Blunt contends the district court's action constituted an acquittal on Count I and any further prosecution on that Count was barred.

[¶ 12] Under N.D.R.Crim.P. 29(a), the district court is authorized, upon the defendant's motion, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Thus to grant a motion for judgment of acquittal under Rule 29, "a trial court must find the evidence is insufficient to sustain a conviction of the offenses charged." *State v. Maki*, 2009 ND 123, ¶ 7, 767 N.W.2d 852 (quoting *State v. Kautzman*, 2007 ND 133, ¶ 10, 738 N.W.2d 1); *see also State v. Ness*, 2009 ND 182, ¶ 11, 774 N.W.2d 254; *State v. Hammeren*, 2003 ND 6, ¶ 6, 655 N.W.2d 707. When considering a motion for judgment of acquittal, "the trial court, upon reviewing the evidence most favorable to the prosecution, must deny the motion if there is substantial evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *Hammeren*, at ¶ 6 (quoting *State v. Steinbach*, 1998 ND 18, ¶ 16, 575 N.W.2d 193).

[¶ 13] Blunt contends that because the district court stated it was grant-

ing the motion for judgment of acquittal as to the grant money, the court's action constituted an acquittal of the offense charged in Count I. In determining what constitutes an acquittal, however, the label used by the district court is not conclusive, and "we look at the substance of the judge's ruling to determine whether it actually represents a resolution of some or all of the factual elements of the offense charged." *State v. Deutscher*, 2009 ND 98, ¶ 8, 766 N.W.2d 442 (quoting *State v. Jackson*, 2005 ND 137, ¶ 5, 701 N.W.2d 887). In *United States v. Pacheco*, 434 F.3d 106, 112 (1st Cir.2006), the court, interpreting Fed.R.Crim.P. 29 in a case in which the trial court purported to grant a "partial" judgment of acquittal on a portion of a single-count indictment, concluded:

> [T]he question of what constitutes a "judgment of acquittal" is not governed either by the form of the trial judge's ruling or by his characterization of it. *See United States v. Scott*, 437 U.S. 82, 96, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); [*United States v.*] *Martin Linen* [*Supply Co.*], 430 U.S. [564,] 571, 97 S.Ct. 1349 [51 L.Ed.2d 642] [ (1977) ]. Rather, a reviewing court "must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Martin Linen*, 430 U.S. at 571, 97 S.Ct. 1349; *see Gonzalez* [*v. Justices of the Mun. Ct.*], 420 F.3d [5,] 8–9 [ (1st Cir. 2005) ]. A resolution in the defendant's favor of a necessary factual element of the offense is a definitive determination that the defendant cannot be convicted.

[¶ 14] In *Blunt*, 2008 ND 135, ¶ 7, 751 N.W.2d 692, we identified the elements of the offense of misapplication of entrusted property under N.D.C.C. § 12.1–23–07(1):

> (1) the disposal, use, or transfer; (2) of any interest in property; (3) which has been entrusted to the defendant; (4) as a fiduciary or in his capacity as a public servant; (5) in a manner he knows is not authorized; (6) and that he knows to involve a risk of loss or detriment to; (7) the owner of the property or the government.

*See also State v. Barendt*, 2007 ND 164, ¶ 10, 740 N.W.2d 87 (recognizing and listing the "seven elements" of misapplication of entrusted property under N.D.C.C. § 12.1–23–07).

[¶ 15] On Count I, the State provided multiple evidentiary bases and legal theories to support its allegation that Blunt had misapplied entrusted property in violation of N.D.C.C. § 12.1–23–07(1). Included in Count I were the State's allegations regarding gift certificates, meeting expenses, legislator expenses, sick leave, and relocation expenses. To find a violation under Count I, the jury did not have to find the State proved each and every one of the instances of improper expenditures alleged in Count I. The State is not required to prove multiple transactions to establish an offense under N.D.C.C. § 12.1–23–07(1), as long as all seven elements of the offense are present. *State v. Jelliff*, 251 N.W.2d 1, 7 (N.D.1977). Removing the allegations regarding the grant money from the jury's consideration did not result in there being insufficient evidence to sustain a conviction of the offense charged. *See Ness*, 2009 ND 182, ¶ 11, 774 N.W.2d 254; *Maki*, 2009 ND 123, ¶ 7, 767 N.W.2d 852. There was ample evidence remaining which, if believed by the jury, was sufficient to establish the essential factual elements of the offense and support a conviction of misapplication of entrusted property. *See Hammeren*, 2003 ND 6, ¶ 6, 655 N.W.2d 707.

[¶ 16] A review of the entire record demonstrates the district court's intent was not to grant a judgment of acquittal on Count I, but rather was to preclude the jury from considering evidence of the grant money in determining whether Blunt had misapplied entrusted property. The court in its discussions with counsel on the record expressly stated its intent that the remaining allegations would be submitted to the jury, and the court's final instructions directed the jury not to consider any evidence relating to the grant money when reaching a verdict.

[¶ 17] Blunt essentially argues the State is required to prove each and every factual allegation and legal theory precisely as pleaded in the complaint or information, or the defendant is entitled to a judgment of acquittal. This Court, however, "has consistently held the State need not prove every allegation in the complaint or information, but is required to prove only the elements of the offense charged." *State v. Trosen*, 547 N.W.2d 735, 740 (N.D. 1996); *see also State v. Tranby*, 437 N.W.2d 817, 823 (N.D.1989) ("[T]he State is not required to prove beyond a reasonable doubt each and every factual allegation set forth in the criminal complaint."). Courts in other jurisdictions have further concluded a trial court has the authority to withdraw from the jury's consideration particular factual issues or legal theories that are not supported by the evidence and submit the remaining factual issues and legal theories to the jury. *See, e.g., Pacheco*, 434 F.3d at 112–14; *United States v. O'Shea*, 426 F.3d 475, 479 n. 3 (1st Cir. 2005); *United States v. Burns*, 624 F.2d 95, 104 (10th Cir.1980); *State v. Mogan*, 627 A.2d 527, 528 (Me.1993); *State v. Hogan*, 194 Neb. 207, 231 N.W.2d 135, 140 (1975). Such a ruling merely "narrow[s]

the scope of the facts that the jury could find in deciding whether to convict on the offense charged." *Pacheco*, at 114. As explained by the Tenth Circuit Court of Appeals in *Burns*:

It is clear that a court may withdraw from jury consideration indictment counts unsupported by evidence. The fact that here the court withdrew one of two charges contained in a single count is inconsequential. The controlling principle is that " '. . . a portion of an indictment that the evidence does not support may be withdrawn from the jury, and this is not an impermissible amendment, provided nothing is thereby added to the indictment, and that the remaining allegations charge an offense.' (C. Wright, 1 Federal Practice and Procedure 274–75 (1969).)" *United States v. Dawson*, 516 F.2d 796 (9th Cir.1975).

*Burns*, 624 F.2d at 104–05 (citation omitted).

[¶ 18] Similarly, in *Hogan*, the Nebraska Supreme Court concluded:

In this case the court amended count II from a charge of possession of marijuana with intent to deliver, to a charge of simple possession of marijuana. The action, for all practical purposes, withdrew from the jury the issue of whether or not the possession was with intent to deliver. While a court has no power to dismiss a part of an offense or direct a verdict of acquittal on one or more degrees of a crime, an attempt to do so will be treated as withdrawing the issue from consideration by the jury. A trial court is bound to submit to the jury only such degrees of the crime as find support in the evidence. Here the evidence did not support the charge of possession of marijuana with intent to deliver and the court was fully justified in withdraw-

ing the issue of intent to deliver from the jury. The offenses involved were based upon the possession of marijuana at a given time and place and the change in the charge could not have created any confusion as to the nature and cause of the accusation nor created any difficulty in defending against it. The action was clearly to the defendant's benefit and his contention of error is unsupportable.

*Hogan*, 231 N.W.2d at 140 (citation omitted).

[¶ 19] Under analogous circumstances, this Court considered a similar argument in *State v. Morris*, 331 N.W.2d 48 (N.D. 1983). Morris had been charged with possession of marijuana with intent to deliver, and the district court denied his motion for judgment of acquittal under N.D.R.Crim.P. 29. The jury convicted Morris of the lesser-included offense of possession of marijuana. On appeal, Morris argued the district court erred in denying his motion for judgment of acquittal and the case should not have been submitted to the jury. This Court concluded:

One might wonder what difference it makes whether the trial judge granted or denied Morris's motion for judgment of acquittal with regard to the major offense charged, i.e., possession with intent to deliver, because Morris was not convicted of the major offense charged; he was convicted of the lesser included offense of simple possession. Had we decided that Morris's motion for acquittal of the crime of possession with intent to deliver should have been granted, Morris would have had us use this decision as a premise in a more elaborate argument: namely, once the trial judge decides a jury could not reasonably conclude from the evidence at trial that the accused is guilty of the major offense

charged, and therefore the motion for judgment of acquittal should be granted, the trial judge should not let the case go to the jury even if there is sufficient evidence for the jury to find the accused guilty of a lesser included offense.

Morris's conception of the procedure a trial judge should follow if a motion for acquittal is granted is not correct.

A trial court's granting of a motion for judgment of acquittal with respect to the major offense charged does not preclude submission of the case to the jury on the basis of the lesser included offense instruction unless, of course, the granting of the motion for acquittal extends to the lesser included offense.

Therefore, even if Morris's motion for judgment of acquittal of the crime of possession with intent to deliver should have been granted, we still would find no reversible error on the trial court's part in submitting Morris's case to the jury because Morris was convicted of the lesser included offense of simple possession and there was sufficient evidence to support a verdict of guilty to the crime of simple possession.

*Morris*, at 55–56 (citations omitted).

[¶ 20] The same rationale applies in this case. The district court determined there was insufficient evidence to support one of the underlying factual bases or legal theories in Count I, but there was sufficient evidence to support a verdict of guilty based upon the remaining factual allegations and legal theories underlying Count I. Rather than submit the unsupported theory to the jury and risk having a verdict that may be based upon an unsupported factual finding, the court merely instructed the jury not to consider evidence of the grant money and removed the

issue from the jury's consideration. Under the circumstances in this case, the court's actions were proper and did not require an acquittal on Count I.

## III

[¶ 21] Blunt contends the district court incorrectly instructed the jury on "reasonable doubt" and allowed the jury to convict him on a burden of proof below that which is constitutionally required.

[¶ 22] The district court gave the pattern jury instruction on reasonable doubt, NDJI Criminal K–1.10 (2004):

Proof Beyond a Reasonable Doubt

The State must prove all of the essential elements of the crime charged by proof beyond a reasonable doubt. In other words, if you have a reasonable 'doubt that the Defendant committed the crime, then you must find the Defendant not guilty.

The State is not required to prove guilt beyond all doubt, but beyond a reasonable doubt.

You should find the Defendant guilty only if you have a firm and abiding conviction of the Defendant's guilt based on a full and fair consideration of the evidence presented in the case and not from any other source.

[¶ 23] Blunt contends the instruction as given did not specifically inform the jury that the proof required was greater than the preponderance of the evidence standard or the clear and convincing evidence standard, did not define proof beyond a reasonable doubt in terms of possibilities and probabilities, and did not advise the jury it needed to "reach a subjective state of near certitude of the guilt of the accused." He contends the court should

have given his requested instruction, which stated:

Proof Beyond a Reasonable Doubt

"Proof beyond a reasonable doubt" is a higher standard of proof than proof by the "greater weight of the evidence" used in most civil cases, and proof by "clear and convincing evidence" used in civil cases of higher importance such as termination of parental rights or civil commitment. In terms of possibilities and probabilities, you can believe that the accused is possibly or even probably guilty without reaching the very high level of probability of guilt required for proof beyond a reasonable doubt. To reach that level, you need to reach a subjective state of near certitude of the guilt of the accused. To convict, your belief has to be beyond all reasonable doubt.

On the other hand, the State is not required to prove guilt beyond all doubt. Everything is open to possible or imaginary doubt, or fanciful conjecture. You should not imagine doubt to justify acquittal. A reasonable doubt is one based on reason after you have given full and fair consideration to all the evidence. A reasonable doubt can arise from the evidence itself, from a lack or insufficiency of evidence, or from no evidence proving an essential element of the crime charged.

[¶ 24] We review jury instructions to determine whether, as a whole, they fairly and adequately advised the jury of the applicable law. *State v. Zajac*, 2009 ND 119, ¶ 12, 767 N.W.2d 825; *State v. Haugen*, 2007 ND 195, ¶ 6, 742 N.W.2d 796; *Hawes v. North Dakota Dep't of Transp.*, 2007 ND 177, ¶ 4, 741 N.W.2d 202. The district court is not required to

instruct the jury in the exact language requested by a party if the instructions given are not misleading or confusing, and if they fairly advise the jury of the law on the essential issues of the case. *Zajac*, at ¶ 12; *Haugen*, at ¶ 6; *Hawes*, at ¶ 4.

[¶ 25] In *State v. Schneider*, 550 N.W.2d 405, 408 (N.D.1996), we noted we have "long recognized the difficulty in defining reasonable doubt and [have] neither required nor prohibited such a definition." *See also State v. Jahner*, 2003 ND 36, ¶ 14, 657 N.W.2d 266. We have also noted the United States Supreme Court has taken a similar approach:

> The United States Supreme Court has stated "[t]he beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id.* (citations omitted).

*Jahner*, at ¶ 13.

[¶ 26] In *Schneider*, we thoroughly reviewed various constitutional challenges to the pattern jury instruction on reasonable doubt and concluded that, taken as a whole, the instruction "correctly conveyed the concept of reasonable doubt to the jury" and "informed the jury of the law, without misleading or confusing the jury." *Schneider*, 550 N.W.2d at 410 (quoting *Victor*, 511 U.S. at 22, 114 S.Ct. 1239). Blunt has recognized the holding in *Schneider* but asks us to revisit the decision in that case, raising similar challenges to the pattern jury instruction and relying primarily on statements, but not the holding, in *Victor*. We reject the invitation to deviate from the holding and rationale expressed in *Schneider*, and we adhere to the Court's conclusion in that case. We conclude the jury instructions given in this case fairly and adequately advised the jury of the applicable law on the essential issues of the case, including reasonable doubt, and were not misleading or confusing.

## IV

[¶ 27] Blunt contends the district court erred in allowing the State to aggregate the amounts of the individual instances of misapplication of property alleged in Count I to satisfy the $10,000 threshold for a class B felony under N.D.C.C. § 12.1–23–07(2)(a).

[¶ 28] Section 12.1–23–07(2), N.D.C.C., provides for grading of misapplication of entrusted property on the basis of the value of the property involved:

Misapplication of entrusted property is:

a. A class B felony if the value of the property misapplied exceeds ten thousand dollars.

b. A class C felony if the value of the property misapplied exceeds five hundred dollars but does not exceed ten thousand dollars.

c. A class A misdemeanor if the value of the property misapplied exceeds two hundred fifty dollars but does not exceed five hundred dollars.

d. A class B misdemeanor in all other cases.

[¶ 29] Prior to trial, Blunt moved to bar the State from aggregating the value

of multiple instances of misapplication of property. The district court concluded the aggregation provision contained in the theft grading statute, N.D.C.C. § 12.1–23–05(6), applied. The district court also relied on this Court's holding in *State v. Jelliff*, 251 N.W.2d 1, 7 (N.D.1977), that the State may elect to charge each misapplication of entrusted property as a separate offense or the State may charge all misapplication of entrusted property as a single offense. Referring to *Jelliff*, the district court concluded on the record, "I think the Supreme Court meant that the State could choose either to do it in a course of conduct and aggregate the offenses or as in this case they could have charged out individual items." The district court allowed the State to charge the multiple instances of misapplication of entrusted property as a single offense and to aggregate the amounts to reach the grading thresholds specified in N.D.C.C. § 12.1–23–07(2).

[¶ 30] The longstanding holding of this Court in *Jelliff* is dispositive of the issue on appeal. Additionally, the plain language of N.D.C.C. § 12.1–23–07 supports affirming the district court, as does the legislative history.

## A

[¶ 31] This Court's opinion in *Jelliff* is dispositive of this case. *Jelliff* was decided in the immediate aftermath of the 1975 effective date of North Dakota's new Criminal Code and interpreted the specific provision Blunt was convicted of violating, N.D.C.C. § 12.1–23–07. Thomas Jelliff was the Grand Forks County state's attorney. He had engaged in a series of transactions diverting funds in an office trust fund to his personal use or benefit. Some of the acts occurred before North Dakota's new

Criminal Code became effective on July 1, 1975, and other transactions occurred after that date. Jelliff was charged under the new law, N.D.C.C. § 12.1–23–07, which became effective July 1, 1975. The defendant Jelliff argued that all the acts—all the misapplication of entrusted property—constituted a single offense and that since some of the conduct occurred before the effective date of the statute, the prosecution was impermissible. In essence, Jelliff argued that the misapplication *had* to be charged cumulatively as in this case. Thus disposing of the issue, this Court held the prosecution could *elect* "to prosecute as one offense a continuous series of acts" or could prosecute each act individually. *Jelliff*, 251 N.W.2d at 7. This Court said:

> Although the lower court did not specifically state the basis of its decision to dismiss, we could speculate that the court must have concluded that, *because statutory violations can occur either by single acts or a continuous series of acts,* the prosecution had elected to prosecute as one offense a continuous series of acts and that, therefore, the prosecution is barred because some of the acts in the series occurred prior to the effective date of the statute. We reject this analysis because no such election has been shown and, in fact, the complaint alleges only a single statutory violation on or about July 28, 1975.

*Id.* (emphasis added).

[¶ 32] Thus this Court held that misapplication of entrusted property could be charged as single acts or as a continuous series of acts. In Blunt's case, the prosecution elected to charge a continuous series of acts. In the Syllabus by the Court, the official holding of the Court under the constitutional provision then in effect, N.D.

Const. § 102 (1889), this Court in *Jelliff* held:

3. Under the provisions of § 12.1–23–07, NDCC, each misapplication of entrusted property *can* be considered a separate offense.

*Id.* at 2 (emphasis added). This Court did not say that each misapplication *must* be considered a separate offense. For a third time, this Court in *Jelliff* emphasized the elective nature of the prosecution's decision to prosecute as single acts or as a continuous series of acts:

A determination that *the statute contemplates a series of transactions exclusively*, rather than single instances of forbidden conduct, would lead to the unreasonable conclusion that anyone who had misapplied entrusted property before the effective date of the statute could, as part of the same series of transactions, continue to violate the statute with impunity after the statute has become effective.

*Id.* at 7 (emphasis added). Again this Court's opinion emphasizes the elective choice of the prosecution.

[¶ 33] On the basis of this Court's holding in *Jelliff*, the district court must be affirmed.

B

[¶ 34] In addition to this Court's holding in *Jelliff*, the plain language of the statutes supports affirming the district court's judgment. The district court did not need to look to N.D.C.C. § 12.1–23–05(6), the aggregation provision contained in the theft grading statute, and the provision on which the dissent focuses, in order to consider the cumulative value of the property misapplied. Even accepting Blunt's position that the section 12.1–23–05(6) aggregation provision does not apply at all to misapplication of entrusted property, the section 12.1–23–07 misapplication offense itself is cumulative and is based on a usually ongoing relationship of trust. Although thefts may be random and unrelated, or part of an ongoing course of conduct, misapplication of entrusted property is predicated on a normally ongoing relationship of trust that relates to property entrusted to the person "as a fiduciary, or in the person's capacity as a public servant or an officer, director, agent, employee of, or a person controlling a financial institution." Section 12.1–23–07, N.D.C.C., provides:

1. A person is guilty of misapplication of entrusted property if the person disposes of, uses, or transfers any interest in *property that has been entrusted to the person* as a fiduciary, or in the person's capacity as a public servant or an officer, director, agent, employee of, or a person controlling a financial institution, in a manner that the person knows is not authorized and that the person knows to involve a risk of loss or detriment to the owner of the property or to the government or other person for whose benefit the property was entrusted.

2. Misapplication of entrusted property is:

   a. A class B felony if *the value of the property misapplied* exceeds ten thousand dollars.

   b. A class C felony if *the value of the property misapplied* exceeds five hundred dollars but does not exceed ten thousand dollars.

   c. A class A misdemeanor if *the value of the property misapplied* ex-

ceeds two hundred fifty dollars but does not exceed five hundred dollars.

d. A class B misdemeanor in all other cases.

N.D.C.C. § 12.1–23–07 (emphasis added).

[¶ 35] By definition, the offense is based on a *relationship* of trust. The plain language of the grading provisions encompasses the property misapplied. "Property" encompasses both the singular and the plural. The North Dakota Century Code itself instructs in the rules for interpreting the code that "[w]ords used in the singular number include the plural and words used in the plural number include the singular, except when a contrary intention plainly appears." N.D.C.C. § 1–01–35. There is no contrary intent that appears. The plain language of the statute relates to "the value of the property misapplied," not to each item of property misapplied. The plain language of N.D.C.C. § 12.1–23–07 encompasses the value of the property Blunt misapplied—not the value of each individual item of property Blunt misapplied. A contrary result would require reading into the statute words— "each item of"—that are not there, and would require ignoring the ongoing relationship of trust.

C

[¶ 36] In addition to this Court's dispositive decision in *Jelliff* and the further support of the plain statutory language, the legislative history is also supportive. Nowhere does the legislative history state that each item of property misapplied must be individually charged.

[¶ 37] Although the legislative history offers support for the premise that the aggregation provision of N.D.C.C. § 12.1–23–05(6) applies to N.D.C.C. § 12.1–23–07, as the district court said, that is not particularly important to the resolution of this case. More importantly, in 1989, when the legislature added graduated penalties for misapplication of entrusted property, *State v. Jelliff* had long been decided. And the legislature is presumed to have been aware of this Court's opinion in *Jelliff* that the prosecution could elect to charge misapplication of entrusted property either as single acts or as a series of acts. *See, e.g., City of Bismarck v. Uhden,* 513 N.W.2d 373, 376 (N.D.1994) (stating that where courts of North Dakota have construed a statute and the construction is supported by long acquiescence on the part of the legislature, it is presumed that the interpretation of the statute is in accordance with legislative intent). Nothing in the 1989 legislative history reflects any intent that each instance of misapplication must be separately charged. *See* 1989 N.D. Sess. Laws ch. 167, § 1 (adding the grading provisions to N.D.C.C. § 12.1–23–07); *Hearing on H.B. 1059 Before the House Judiciary Comm.,* 51st N.D. Legis. Sess. (Jan. 10, 1989) (stating the bill provided for additional classifications for the grading of misapplication of entrusted property, but making no reference to separately charging each instance of misapplication); *Hearing on H.B. 1059 Before the Senate Judiciary Comm.,* 51st N.D. Legis. Sess. (Feb. 21, 1989) (same); *Report of the N.D. Legis. Council* 160–61 (1989) (reporting the committee recommended the amendment to provide for additional classifications for the grading of misapplication of entrusted property, but making no reference to separately charging each instance of misapplication); *Minutes of Interim Law Enforcement Comm.* (June 23, 1987; Oct. 20, 1987; Jan. 12, 1987; May 10, 1988; and Sept. 23, 1988) (reflecting the bill was introduced as

part of the effort to provide protective services to vulnerable adults).

## D

[¶ 38]   As this Court said in *Jelliff*:

We have held repeatedly that statutes must be construed to avoid ludicrous and absurd results, and that courts endeavor to construe statutes so as to effectuate the legislative purposes which prompted their enactment. *Certainly a construction of a criminal statute which nullifies its punitive provisions contravenes the purpose of the enactment and leads to illogical and absurd results.*

251 N.W.2d at 7 (citations omitted) (emphasis added).

[¶ 39]   Section 12.1–23–07, N.D.C.C., misapplication of entrusted property, under this Court's holding in *Jelliff*, under the plain language of the statute, and under legislative acquiescence in its subsequent enactment, permits consideration in a single count all the property misapplied. The evidence presented here supports the jury's verdict that the value of the property misapplied by Blunt exceeded $10,000.

## V

[¶ 40]   We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit.  We affirm the order deferring imposition of sentence.

[¶ 41]   DANIEL J. CROTHERS and MARY MUEHLEN MARING, JJ., and KIRK SMITH, S.J., concur.

[¶ 42]   The Honorable KIRK SMITH, Surrogate Judge, sitting in place of KAPSNER, J., disqualified.

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 43]   I concur in Parts I, II and III of the majority opinion.  Because I do not agree that *State v. Jelliff*, 251 N.W.2d 1 (N.D.1977), controls our decision and because I read the legislative history of N.D.C.C. ch. 12.1–23 differently than does the majority, I respectfully dissent to Parts IV and V of the majority opinion.

[¶ 44]   The State contends, and the district court concluded, that the aggregation provision contained in the theft grading statute, N.D.C.C. § 12.1–23–05(6), applies and allows the State to charge multiple instances of misapplication of entrusted property as a single offense and aggregate the amounts to reach the grading thresholds specified in N.D.C.C. § 12.1–23–07(2). The statute relied upon by the State and the district court provides:

For purposes of grading, the amount involved in a theft under this chapter shall be the highest value by any reasonable standard, regardless of the actor's knowledge of such value, of the property or services which were stolen by the actor, or which the actor believed that the actor was stealing, or which the actor could reasonably have anticipated to have been the property or services involved.  Thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be charged as one offense and the amounts proved to have been stolen may be aggregated in determining the grade of the offense.

N.D.C.C. § 12.1–23–05(6).  The district court concluded that the language "under this chapter" in the first sentence of N.D.C.C. § 12.1–23–05(6) indicated the legislature intended the subsection to ap-

ply to all offenses in N.D.C.C. ch. 12.1–23, including misapplication of entrusted property.

[¶ 45] The rationale employed by the district court is incomplete and ignores other language in the statute. Section 12.1–23–05(6) does not say that it applies to all offenses under chapter 12.1–23; it expressly applies to "*theft* under this chapter" and only allows "amounts proved to have been *stolen*" to be aggregated. N.D.C.C. § 12.1–23–05(6) (emphasis added). The legislature has defined "stolen" for purposes of N.D.C.C. ch. 12.1–23:

> "Stolen" means property which has been the subject of theft or robbery or a vehicle which is received from a person who is then in violation of section 12.1–23–06.

N.D.C.C. § 12.1–23–10(11). Thus, the critical question is whether misapplication of entrusted property under N.D.C.C. § 12.1–23–07 constitutes "theft" as required by N.D.C.C. § 12.1–23–05(6).

[¶ 46] Chapter 12.1–23, N.D.C.C., was part of the criminal code originally adopted in 1973. *See* 1973 N.D. Sess. Laws ch. 116, § 22; *State v. Ensz,* 503 N.W.2d 236, 238 (N.D.1993). The consolidation of numerous theft offenses was described as "one of the most radical changes in current North Dakota law" in the proposed new criminal code. *Minutes of Interim Comm. on Judiciary "B"* 36 (June 20–21, 1972); *see Ensz,* at 238. The legislature took the unusual step of enacting an expression of legislative intent explaining its consolidation of previously recognized theft offenses into three specific code sections, N.D.C.C. §§ 12.1–23–02, –03, and –04:

> Conduct denominated theft in sections 12.1–23–02 to 12.1–23–04 constitutes a single offense designed to include the separate offenses heretofore known as larceny, stealing, purloining, embezzlement, obtaining money or property by false pretenses, extortion, blackmail, fraudulent conversion, receiving stolen property, misappropriation of public funds, swindling, and the like.

N.D.C.C. § 12.1–23–01(1); *see Minutes of Interim Comm., supra,* at 36 (Section 12.1–23–01(1) "provides that the theft offenses are to be construed as consolidating the numerous separate offenses previously known in the criminal law, i.e., this section provides a statement of 'legislative intent'"). This statutory expression of legislative intent, coupled with the recognition in the minutes of the interim committee that N.D.C.C. §§ 12.1–23–02, –03, and –04 consolidated the theft offenses "previously known in the criminal law," strongly suggests that the legislature intended those three code sections to encompass all theft offenses under the North Dakota Century Code and that misapplication of entrusted property under N.D.C.C. § 12.1–23–07 is not theft.

[¶ 47] A broader review of the legislative history and policy underpinnings of N.D.C.C. ch. 12.1–23 further supports this conclusion. Chapter 12.1–23, as originally enacted in 1973, was derived from the proposed Federal Criminal Code. When confronted with a question of statutory interpretation, we are thus guided by the drafters' official comments to the proposed Federal Criminal Code and the relevant legislative history, including the *Working Papers of the National Commission on Reform of Federal Criminal Laws* (1970) ("*Working Papers*"). *State v. Stensaker,* 2007 ND 6, ¶ 9, 725 N.W.2d 883; *State v. Knowels,* 2002 ND 62, ¶ 9, 643 N.W.2d 20. The official commentary to the proposed

Federal Criminal Code and the *Working Papers* are persuasive in interpreting the intent of our criminal code when the North Dakota statute does not vary in substance from its federal counterpart. *See State v. Beciraj,* 2003 ND 173, ¶ 15, 671 N.W.2d 250; *Knowels,* at ¶ 9.

[¶ 48] The drafters of the proposed Federal Criminal Code unequivocally indicated that misapplication of entrusted property was not theft under the Code. Addressing the federal provision on misapplication of entrusted funds, the drafters explained:

> *Misapplication of Property.*—The offense proposed in section 1737 involves one who deals with entrusted property in an unauthorized manner that exposes the property to a risk of loss. This offense is the second step in the three-tiered approach suggested by the theft materials for the problems posed by the mishandling of funds by public employees.
>
> The first step involves the offense of theft, and in particular the definition of "deprive," which provides that an employee "deprives" the government of property if he disposes of it in a manner such as to make its restoration, in fact, unlikely. This was supplemented by the provision that a failure to account upon demand amounts to a prima facie case of theft.
>
> The second step—taken by proposed section 1737—is to treat as a misdemeanor any disposition of entrusted property that is not authorized and that at the same time exposes the property to a risk of loss or detriment. The idea is thus that a theft is made out if the actor uses or disposes of entrusted property in a manner that involves a loss of his control over its use. The misde-

meanor of misapplication is made out if his use or disposition of the property does not involve a loss of control, but on the other hand does involve exposure of the property to a risk of loss.

> The third step, is to rely on various regulatory offenses involving breach of duty with regard to entrusted funds. Thus, for example, depositing money in an authorized depositary could subject the employee to serious sanctions of a civil nature, but would not become truly criminal unless the offenses of misapplication or theft could be made out. It is believed that this three-tiered approach, described more fully in the commentary to the theft proposal, more accurately poses the significant issues on which the degree of criminal liability should turn, while at the same time retaining the salutary deterrent effect of the present law.

II *Working Papers,* at 974 (citations and footnote omitted); *see also* Final Report of the National Commission on Reform of Federal Criminal Laws 205, Introductory Note to Theft and Related Offenses (1971) ("Final Report"); Final Report 212–13, Comment to § 1737; II *Working Papers,* at 920–21, 930–31. As noted by the drafters, "there are a number of existing Federal statutes that include ... forms of diversions or loss of property that cannot properly be denominated 'theft' " including "statutes which speak of the 'misapplication' or 'use' of property." II *Working Papers,* at 930. These comments clearly evince the drafters' intent that theft and misapplication of entrusted property were entirely separate and distinct offenses, and I conclude that when our legislature enacted the theft and misapplication of entrusted property provisions of the proposed Federal Criminal Code in 1973 it acted

with the same intent. *See Stensaker,* 2007 ND 6, ¶ 9, 725 N.W.2d 883; *Beciraj,* 2003 ND 173, ¶ 15, 671 N.W.2d 250; *Knowels,* 2002 ND 62, ¶ 9, 643 N.W.2d 20.

[¶ 49] The clear distinction between theft and misapplication of entrusted property embodied in the proposed Federal Criminal Code is particularly significant when considering application of the theft grading statute. In their Introductory Note to the Theft and Related Offenses section of the proposed Federal Criminal Code, the drafters expressly noted that the theft grading provision, § 1735, "deal[t] with theft only." Final Report 205, Introductory Note to Theft and Related Offenses. Thus, the drafters clearly demonstrated their intent that the theft grading provision, including the aggregation provision, did not apply to misapplication of entrusted property.

[¶ 50] In the theft grading provision in the proposed Federal Criminal Code, the statute does not include the language "theft under this chapter," but refers specifically to the theft provisions by section number:

> Valuation. For purposes of grading, the amount involved in a theft under sections 1732 to 1734 shall be the highest value by any reasonable standard. . . . Thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be charged as one offense and the amounts proved to have been stolen may be aggregated in determining the grade of the offense.

Final Report § 1735(7). Sections 1732 to 1734 of the proposed Federal Criminal Code were adopted as N.D.C.C. §§ 12.1–23–02, –03, and –04. When the new criminal code was adopted in this state in 1973,

the legislature substituted the phrase "theft under this chapter" in place of the specific federal sections listed in the first sentence of the federal provision. There is no indication in the state legislative history that this was intended as a substantive change, but appears merely to be an attempt to conform the statute to the structure and format of the North Dakota Century Code. Given the clear direction in the federal history that misapplication of entrusted property was not theft and that the theft grading provision applied to "theft only," I do not believe the legislature intended the theft grading provision to apply to the misapplication of property statute when it enacted N.D.C.C. ch. 12.1–23 in 1973.

[¶ 51] Furthermore, any question about the legislature's intent is resolved when one considers the language of the misapplication of entrusted property statute as enacted in this state in 1973. As originally enacted, misapplication of entrusted property was always a class A misdemeanor—there was no grading of the offense based upon value of the property:

> 12.1–23–07. MISAPPLICATION OF ENTRUSTED PROPERTY.) A person is guilty of a class A misdemeanor if he disposes of, uses, or transfers any interest in, property which has been entrusted to him as a fiduciary, or in his capacity as a public servant or an officer, director, agent, employee of, or a person controlling a financial institution, in a manner that he knows is not authorized and that he knows to involve a risk of loss or detriment to the owner of the property or to the government or other person for whose benefit the property was entrusted.

1973 N.D. Sess. Laws ch. 116, § 22. Under this provision, any misapplication of

entrusted property, whether ten dollars or ten thousand dollars, was a class A misdemeanor. Thus, the aggregation provision of the theft grading statute clearly had no application to misapplication of entrusted property because the value of the property was wholly irrelevant. Accordingly, when the legislature enacted the theft grading statute, including the language "theft under this chapter" in N.D.C.C. § 12.1–23–05(6), it could not have intended the aggregation provision would apply to misapplication of entrusted property under N.D.C.C. § 12.1–23–07.

[¶ 52] The legislature's 1989 amendment of N.D.C.C. § 12.1–23–07, which added the grading thresholds for misapplication of entrusted property, does not indicate any intent to make the theft grading aggregation provision in N.D.C.C. § 12.1–23–05(6) applicable to misapplication of entrusted property, and in fact demonstrates the opposite. The 1989 amendment of N.D.C.C. § 12.1–23–07 arose from an interim study on adult protective services by the Legislative Council. See Report of the North Dakota Legislative Council to the Fifty-first Legislative Assembly 160–61 (1989) ("Legislative Council Report"). In response to concerns that classification of the offense of misapplication of entrusted property as a class A misdemeanor did not provide a meaningful penalty in cases where entrusted property of substantial value belonging to a vulnerable adult was misapplied, the legislature deleted the language making misapplication of entrusted property a class A misdemeanor and enacted separate grading classifications for that offense. See 1989 N.D. Sess. Laws ch. 167, § 1; N.D.C.C. § 12.1–23–07. The legislature's action, and the legislative history of the 1989 amendment, demonstrate the legislature did not intend the aggregation provision in N.D.C.C. § 12.1–23–05(6)

to apply to misapplication of entrusted property.

[¶ 53] The legislative history indicates the legislature was well aware of the historical distinctions between theft and misapplication of entrusted property under the state and proposed federal codes. The history expressly notes the three-tiered approach embodied in the proposed Federal Criminal Code, including the clear distinction between theft and misapplication of entrusted property:

According to the final report of the National Commission on Reform of Federal Criminal Laws, from which the North Dakota Criminal Code was derived, the offense of misapplication of entrusted property is part of a three-step approach to the problems posed by the mishandling of property by persons in a fiduciary relationship. The first step in the approach taken in the proposed federal code and the North Dakota Criminal Code is to define "deprived," a key element in the offense of theft but not an element of the offense of misapplication of entrusted property, to include only those misapplications of property in which restoration of the property is unlikely. The offense of misapplication of entrusted property constitutes the second step in this approach to mishandling of property by persons in a fiduciary relationship in that any disposition of entrusted property which is not authorized and which exposes the property to a risk of loss or detriment is treated as a misdemeanor. The third step in the approach provides that any other breach of duty with regard to entrusted property, regardless of risk of loss, be treated as a regulatory offense outside the Criminal Code.

Legislative Council Report, at 161.

[¶ 54] Perhaps the clearest indication of the legislature's intent arises from the

fact that it adopted a separate grading provision for misapplication of entrusted property expressly based upon the theft grading provision, but did not incorporate an aggregation provision similar to N.D.C.C. § 12.1–23–05(6). The grading threshold amounts in N.D.C.C. § 12.1–23–07(2) replicate the thresholds encompassed in N.D.C.C. § 12.1–23–05, and the legislative history of the 1989 amendment expressly notes that the property value thresholds set forth for the various levels of offenses "generally follow the classifications used for the grading of theft offenses under NDCC Section 12.1–23–05." Legislative Council Report, at 161. Yet when the legislature expressly engrafted the same dollar value thresholds in subsections (1), (2), (3), and (4) of N.D.C.C. § 12.1–23–05 into a separate grading provision for misapplication of entrusted property in N.D.C.C. § 12.1–23–07(2), it did not include an aggregation provision similar to N.D.C.C. § 12.1–23–05(6). It is a fundamental rule of statutory construction that "[i]t must be presumed that the Legislature intended all that it said, and that it said all that it intended to say." *State v. Dennis*, 2007 ND 87, ¶ 12, 733 N.W.2d 241 (quoting *Little v. Tracy*, 497 N.W.2d 700, 705 (N.D.1993)); *see also Simon v. Simon*, 2006 ND 29, ¶ 17, 709 N.W.2d 4; *Public Serv. Comm'n v. Wimbledon Grain Co.*, 2003 ND 104, ¶ 28, 663 N.W.2d 186; *State v. Myers*, 73 N.D. 687, 710, 19 N.W.2d 17, 29 (1945) ("The Legislature must be presumed to have meant what it said, and all that it said, and nothing else."). The legislature's decision to adopt a separate grading provision in N.D.C.C. § 12.1–23–07(2) based upon N.D.C.C. § 12.1–23–05, without incorporating an aggregation provision, is a clear indication that the legislature did not intend to allow the amounts of multiple offenses to be aggregated to reach the grading thresholds in N.D.C.C. § 12.1–23–07(2).

[¶ 55] Nor do I believe this Court's decision in *State v. Jelliff* is controlling. In *Jelliff* the issue before the Court was whether the alleged acts of misapplication of entrusted property which occurred before July 1, 1975, the effective date of N.D.C.C. § 12.1–23–07, was cause to dismiss the entire criminal complaint which contained allegations of misapplication both before and after July 1, 1975. The Court concluded, as I have concluded, that each misapplication of entrusted property can be considered a separate offense. The issue before the Court did not involve the grading of those separate offenses and the opinion of the Court contained no discussion of the legislative history of the relevant statutes which had been enacted and became effective during the time of the alleged violations.

[¶ 56] I recognize that my construction of the statute may appear somewhat unwieldy in a case such as this, where there are literally dozens of alleged instances of misapplication of entrusted property. Our prior caselaw makes it clear, however, that the State need not prove a series of transactions to establish the offense, and each individual misapplication of entrusted property constitutes a completed statutory offense. *Jelliff*, 251 N.W.2d at 7. While valid public policy reasons may exist for allowing aggregation of the value of multiple misapplications of entrusted property, such determinations of policy are for the legislature, not the courts. *E.g., Doyle v. Sprynczynatyk*, 2001 ND 8, ¶¶ 14, 17, 621 N.W.2d 353. The primary goal when construing a statute is to ascertain the intent of the legislature. *E.g., Nelson v. Johnson*, 2010 ND 23, ¶ 12, 778 N.W.2d 773; *State v. Brown*, 2009 ND 150, ¶ 15, 771

N.W.2d 267. It is for the legislature to amend a statute if the language of the statute does not accurately reflect the legislature's intent; the duty of the judiciary is to simply enforce the law as it exists. *Olson v. Workforce Safety & Ins.*, 2008 ND 59, ¶ 23, 747 N.W.2d 71.

[¶ 57] One final consideration factors into our interpretation of the statutes at issue in this case. This Court has repeatedly cautioned that criminal statutes are to be strictly construed in favor of the defendant and against the government. *See, e.g., State v. Corman*, 2009 ND 85, ¶ 15, 765 N.W.2d 530; *State v. Geiser*, 2009 ND 36, ¶ 16, 763 N.W.2d 469; *Dennis*, 2007 ND 87, ¶ 12, 733 N.W.2d 241. Interpreting the various provisions in N.D.C.C. ch. 12.1–23 in light of their legislative history, and construing them strictly in favor of the defendant and against the government, I conclude that the aggregation provision in the theft grading statute, N.D.C.C. § 12.1–23–05(6), does not apply to the offense of misapplication of entrusted property, and the amounts of multiple instances of misapplication of entrusted property may not be aggregated to reach the grading thresholds set out in N.D.C.C. § 12.1–23–07(2).

[¶ 58] Because I believe the district court erred in holding that N.D.C.C. § 12.1–23–05(6) applied and allowed the jury to aggregate the amounts of multiple instances of misapplication of entrusted property, it is necessary to consider the effect of this error upon the jury verdict and the appropriate remedy on appeal.

[¶ 59] The only allegation of misapplication of entrusted property in Count I that individually totaled more than $10,000 was the grant money allegation. As the majority notes, the district court instructed the jury it was not to consider evidence of the grant money in reaching its verdict. A jury is presumed to follow the instructions given by the court. *E.g., State v. Stridiron*, 2010 ND 19, ¶ 8, 777 N.W.2d 892; *State v. Paul*, 2009 ND 120, ¶ 27, 769 N.W.2d 416; *State v. Kruckenberg*, 2008 ND 212, ¶ 24, 758 N.W.2d 427.

[¶ 60] I therefore presume that the jury found Blunt had committed multiple instances of misapplication of entrusted property and aggregated the amounts to find him guilty of a class B felony under N.D.C.C. § 12.1–23–07(2)(a). The remaining allegations urged by the State in support of Count I were numerous instances of gift certificates purchased for WSI employees; food, beverages, flowers, balloons, decorations, costume rentals, ornaments, and employee gifts for WSI meetings; food and convention expenses for legislators; sick leave paid to a WSI executive; and failure to recoup relocation expenses owed by a WSI executive. The jury returned a general verdict finding Blunt guilty on Count I. Thus, the jury had to have found the seven elements of the statutory offense had been proven. *See Blunt*, 2008 ND 135, ¶ 7, 751 N.W.2d 692; *Barendt*, 2007 ND 164, ¶ 10, 740 N.W.2d 87. I have no way of discerning, however, which allegations the jury believed and how it arrived at an amount misapplied in excess of $10,000. In short, the jury found Blunt had on multiple occasions misapplied entrusted property, but I cannot point to any single item with a specific dollar amount that the jury relied upon.

[¶ 61] The grading provision in N.D.C.C. § 12.1–23–07(2) sets various thresholds based upon the value of the property misapplied: a class B felony if the value exceeds $10,000, a class C felony for $500 to $10,000, a class A misdemeanor for $250 to $500, and a class B misdemean-

or "in all other cases." Because the jury should not have been allowed to aggregate the amount of multiple offenses, and because I cannot discern with certainty that the jury found any single misapplication of property valued in excess of $250, I conclude the appropriate remedy on appeal is to consider this offense as falling within "all other cases" under N.D.C.C. § 12.1–23–07(2)(d) and to treat the jury's verdict as a finding of guilt of a single instance of misapplication of entrusted property in an amount less than $250, a class B misdemeanor. I would therefore reverse the order deferring imposition of sentence based upon a class B felony and remand with directions that the jury verdict be treated as a finding of guilt of a class B misdemeanor.

[¶ 62] Gerald W. VandeWalle, C.J.